JOHN LOCHE vs. DEAN WITTER REYNOLDS, INC., & others.[1]

No. 87-829.

Suffolk. April 14, 1988. — August 12, 1988.

Present: KASS, CUTTER, & FINE, JJ.

*Federal Arbitration Act. Arbitration,* Securities account. *Securities,* Sale. *Interstate Commerce. Fraud. Conversion. Contract,* Sale of securities, Performance and breach. *Waiver.*

Discussion of the Federal Arbitration Act, 9 U.S.C. § 2, as it applies to controversies in State court involving interstate commerce. [300-301]

Discussion of the criteria for determining whether a particular controversy in a State court relates to interstate commerce so that the provisions of the Federal Arbitration Act, 9 U.S.C. § 2, are applicable. [301-303]

A Superior Court judge incorrectly denied a motion to compel arbitration on certain claims in a controversy arising from an investment contract, where the provisions of the Federal Arbitration Act, 9 U.S.C. § 2, were applicable with respect to at least one party to enforce an arbitration provision of the contract. [303-304]

Certain claims arising out of an investment contract were to be stayed pending resolution of related claims by arbitration. [304-305]

A plaintiff, a party to an investment contract with an enforceable arbitration provision, did not in the circumstances waive his right under the agreement to select the arbitrator when he refused the defendant's demand for arbitration on the grounds that the dispute was not subject to the arbitration provision and that a case then pending in the Supreme Court of the United States had a bearing on the issue of arbitrability. [305]

CIVIL ACTION commenced in the Superior Court Department on March 31, 1987.

A motion to compel arbitration was heard by *Elbert Tuttle,* J.

*Susan Hughes Banning (Edward Notis-McConarty* with her) for the plaintiff.

*Jody E. Forchheimer* for Dean Witter Reynolds, Inc.

[1] Anthony Mallozzi and James Kearney.

CUTTER, J.  On March 31, 1987, Loche brought an action against Dean Witter Reynolds, Inc. (DWR), and two brokers employed by that firm. The complaint in four counts alleged that Kearney and Mallozzi (sometimes referred to hereafter as "the brokers"), acting for DWR, had committed fraud, conversion, violations of Federal securities laws (see note 4, *infra*), and a breach of contract in connection with an investment by Loche.

On April 24, 1987, DWR's counsel by letter demanded that Loche submit his claim to arbitration under a "Securities Account Agreement" (the agreement) between Loche and DWR which contained the provisions set out in the margin for arbitration and governing law.[2] To this letter Loche's counsel replied by letter dated April 29, 1987, saying, among other things, "At this time, we decline to submit . . . Loche's claims to arbitration." With respect to Loche's claims under § 10(b) of the Securities Exchange Act of 1934, Loche's counsel pointed out that a similar issue concerning arbitration was presented in a case then pending before the Supreme Court of the United States. With respect to Loche's remaining claims, counsel "disagree[d] that these . . . are claims 'arising out of

---

[2] The provisions read (emphasis supplied): "*Arbitration of Controversies*[.] Any controversy between DWR and me *arising out of or relating to* this contract or the breach thereof, shall be settled by arbitration in accordance with the rules, then obtaining, of either the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to DWR at DWR's main office within five (5) days after receipt of notification from DWR requesting such election, then I authorize DWR to make such election on my behalf. Any arbitration hereunder shall be before at lease [*sic*] three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

"*Governing Law*[.] This agreement and its enforcement shall be governed by the laws of the State of New York and its provisions shall be continuous, shall cover individually and collectively all accounts which I may open or re-open with DWR, and shall enure to the benefit of DWR's present organization, and any successor organization, . . . and shall be binding upon me and/or [*sic*] my estate, executors, administrators and assigns."

or relating to' the . . . [a]greement between Loche and . . . [DWR]" and also "decline[d] to submit these claims to arbitration."[3]

DWR, on May 5, 1987, filed a motion under the Federal Arbitration Act, 9 U.S.C. §§ 3 & 4 (1982), for an order that Loche be compelled to arbitrate as provided in the agreement. On May 18, 1987, a Superior Court judge denied DWR's motion (without comment or stating reasons which might have been helpful to the parties and others in a somewhat novel situation in this Commonwealth). A single justice of this court (acting under the first paragraph of G. L. c. 231, § 118) granted DWR leave to appeal to a panel of this court and stayed proceedings pending appeal. That appeal is now before us.

## Allegations of the Complaint

The nature of the case must be determined principally on the allegations of the complaint. Those allegations are summarized in the following paragraphs.

At all relevant times, Loche had an account with DWR, where Kearney and Mallozzi were said to be brokers. In October, 1984, Loche consulted Kearney about an investment in shares to be issued by Mosaic Technologies (Mosaic). Kearney later informed Loche that the proposed stock purchase called for him to invest as a limited partner in Weston Venture Partners I (Weston), which would hold the Mosaic common stock. Loche delivered to Kearney a $5,000 check for the commission and a $25,000 check payable to Weston for an equity interest in Mosaic *common* stock. Loche also signed a subscription agreement and a power of attorney to Mallozzi as a general partner of Weston.

Loche later learned that his money had been invested in *preferred* stock of Mosaic through Wellesley Venture Partners I (Wellesley), rather than in voting *common* stock through Weston. Only $20,000 had been invested in Wellesley, with the

---

[3] Loche's counsel in his letter of April 29, 1987, refusing arbitration did not select which arbitration tribunal (American Arbitration Association or the board of arbitration of the New York Stock Exchange) should hear the matter in the event that the controversy should later be held to be subject to the arbitration provisions.

remaining $5,000 going to Mallozzi as a sales commission. Loche was informed, when he inquired about what had taken place, that the Wellesley investment had been made pursuant to a Wellesley subscription agreement and power of attorney. Upon inspecting copies of those documents, Loche discovered that his signature had been forged.

Loche alleges in Count I that Kearney and Mallozzi fraudulently induced him to pay over his money to them by false representations that the funds would be invested in Mosaic common stock through Weston. In Count II Loche alleges that he entrusted Kearney and Mallozzi with $30,000 for the Weston investment, and that by forgeries the brokers converted the funds by investing them in Wellesley. Finally, in Count IV[4] Loche alleges that he had agreed with Kearney and Mallozzi, as general partners of Weston, that his funds would be invested in Mosaic common stock through Weston, and that Kearney and Mallozzi broke that agreement by investing Loche's funds through Wellesley.

In each count, Loche also alleges that DWR is liable because Kearney and Mallozzi were acting as brokers within the scope of their employment by DWR. DWR has filed an answer largely stating that it was without information sufficient to enable it to answer the complaint and also denying that it knew of the brokers' wrongful activities as alleged, or that it authorized or approved of them, or that either Kearney or Mallozzi was acting within the scope of his employment when they, respectively, allegedly took part in the activities charged in the complaint. DWR expressly denied an allegation of paragraph 4 of the complaint that Mallozzi was a broker at DWR. Mallozzi has filed a formal answer to the complaint containing mostly denials of allegations or assertions of insufficient knowledge to permit an answer, but denying that he has ever been a broker at DWR. Kearney does not appear to have filed a formal answer in this proceeding but the record appendix contains a letter from him to Loche's counsel purporting to clarify the facts.

---

[4] Count III, alleging a violation of Federal securities laws, was voluntarily dismissed by Loche.

## Contentions of the Parties

Loche now contends that the agreement must be interpreted under the State law of New York rather than under Federal law, and that (even under Federal law) the arbitration provision (note 2, *supra*) "does not encompass Loche's claims." He also contends that, if the claims are decided to be arbitrable, he remains entitled to select the arbitrator in accordance with the arbitration provision of the agreement.

DWR contends that Loche's claims against it are arbitrable under the Federal Arbitration Act and the terms of the agreement and that (as Loche did not select an arbitral tribunal within the time specified in the agreement's arbitration provision, note 2, *supra*) DWR's selection of the arbitration committee of the New York Stock Exchange is binding upon the parties.

## Discussion

1. The Federal Arbitration Act, 9 U.S.C. § 2 (1982), makes enforceable a written arbitration agreement in any contract with respect to a transaction involving interstate commerce (see definition of "commerce" in § 1).[5] It constitutes "a [C]ongressional declaration of a liberal [F]ederal policy favoring arbitration agreements, notwithstanding any [S]tate substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). It preempts State arbitration law for contracts involving interstate commerce. *Southland Corp.* v. *Keating,* 465 U.S. 1, 10-16 (1984).

Section 3 of the act requires Federal courts to stay judicial proceedings concerning any dispute covered by an arbitration

---

[5] Section 2 of the Federal act reads in part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract [or] transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

agreement relating to interstate commerce.[6] This requirement applies to State courts as well as Federal courts. See the *Cone Memorial Hosp.* case, 460 U.S. at 26-27. Under § 4, a party aggrieved by another party's refusal to arbitrate a dispute covered by the agreement to arbitrate may seek a court order to compel the refusing party to arbitrate. It is, perhaps, less certain that § 4 requires State courts to grant orders compelling arbitration, but the Federal act certainly does not prohibit such an order. See the *Southland Corp.* case, 465 U.S. at 16 & n.10. Whether the controversy is arbitrable under the Federal act must be decided by the court (and not by an arbitrator). In making that decision, however, the court is not required (and, indeed, not permitted) "to rule on the potential merits of the underlying claims." See *AT&T Technologies, Inc.* v. *Communications Workers of America*, 475 U.S. 643, 649-650 (1986), cited in *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional School Dist. Comm.*, 398 Mass. 695, 700 (1986). See, as to the broadly interpreted Federal preemption of possibly conflicting State arbitration and other statutes, *Perry* v. *Thomas*, 482 U.S. 483, 489-492 (1987), which discusses a California statute provision which seems more explicit in its conflict than any other State statute brought to our attention in the present case.

In determining whether the present controversy relates to interstate commerce, the motion judge should have looked at the arbitration provision of the agreement (note 2, *supra*) and the complete situation alleged in the complaint, to determine whether the arbitration provision was intended to apply to every aspect of the investment relationship between Loche and DWR and whether that relationship contemplated transactions in in-

---

[6] Section 3 reads: "If any suit . . . be brought in *any of the courts of the United States* upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration" (emphasis supplied).

terstate commerce. See *Metro Industrial Painting Corp.* v. *Terminal Constr. Co.*, 287 F.2d 382, 387 (2d Cir. 1961). Contracts whose very purpose is to create a relationship for the purchase and sale of securities almost necessarily will involve interstate commerce. See discussion in *Wilko* v. *Swan*, 346 U.S. 427, 430-438 (1953, margin agreement, although waiver of all judicial relief by an agreement to arbitrate may be precluded under some Federal statutes); *Robinson* v. *Bache & Co.*, 227 F.Supp. 456, 457-458 (S.D. N.Y. 1964, margin and lending account); *Macchiavelli* v. *Shearson, Hammill & Co.*, 384 F.Supp. 21, 30 (E.D. Cal. 1974). See also *Corey* v. *New York Stock Exchange*, 493 F.Supp. 51, 54 (W.D. Mich. 1980), aff'd, 691 F.2d 1205 (6th Cir. 1982); *Willis* v. *Shearson/American Express, Inc.*, 569 F.Supp. 821, 822-823 (M.D. N.C. 1983).[7]

Loche (for the position mentioned in note 7) relies upon miscellaneous decisions in the United States Court of Appeals for the Third Circuit. Those on their facts are largely distinguishable from the situation before us. See *Merritt-Chapman & Scott Corp.* v. *Pennsylvania Turnpike Commn.*, 387 F.2d 768, 771-773 (3d Cir. 1967, dealing with a construction contract with an arbitration provision not shown to have involved interstate commerce); *Gavlik Constr. Co.* v. *H.F. Campbell Co.*, 526 F.2d 777, 785 (3d Cir. 1975); *Goodwin* v. *Elkins &*

---

[7] Loche argues that the Federal Arbitration Act (presumably §§ 3 and 4) requires that only the trial (motion) judge make the initial determination whether interstate commerce was contemplated in the agreement between Loche and DWR, and that it is not for an appellate court to reverse that determination. Both § 3 and § 4 refer to what "courts of the United States" may do under the Federal act. Loche brought his action in the Superior Court and thus selected a State forum, not a "court of the United States." We perceive nothing in § 3 or § 4 which precludes application by any Massachusetts court (properly considering the issue) of the strong Commonwealth policy, see *Maxwell Shapiro Woolen Co.* v. *Amerotron Corp.*, 339 Mass. 252, 257-261 (1959); *Lawrence* v. *Falzarano*, 380 Mass. 18, 26-29 (1980); *Quirk* v. *Data Terminal Systems*, 394 Mass. 334, 338-340 (1985), in favor of arbitration reflected in G. L. c. 251, and the possibly even stronger policy of the Federal statute (see *Perry* v. *Thomas,* 482 U.S. at 489-490) in favor of enforcing arbitration agreements "within the full reach of the Commerce Clause."

*Co.*, 730 F.2d 99, 109 (3d Cir.), cert. denied, 469 U.S. 831 (1984). We do not follow those decisions to the extent that they do not conform with Massachusetts appellate practice. Particularly is this so where an appellate court is reviewing action of a trial or motion judge on an issue not shown to be based on any proof before him, other than the same documentary material reproduced in the appellate record appendix.

We are in the same position that the motion judge was in to rule whether that documentary material [8] shows a relationship between Loche and DWR contemplating dealings between them involving interstate commerce. See *Stamper* v. *Stanwood*, 339 Mass. 549, 551 (1959); *Joseph E. Bennett Co.* v. *Commonwealth*, 21 Mass. App. Ct. 321, 324 (1985). On such documentary material, we perceive no statutory barrier (either in G. L. c. 251, our own statute dealing with arbitration, or in the Federal Arbitration Act) to our determining that the motion judge reached the wrong conclusion, if he did do so.

The arbitration provision before us (see note 2, *supra*) is very broad and deals with "[a]ny controversy between . . . [Loche and DWR] arising out of or relating to this contract." [9] The contract contemplated a continuing investment relationship, much of it necessarily involving interstate commerce. Loche's complaint contains allegations which essentially assert that the brokers were acting within the scope of their employ-

[8] Under our own arbitration statute, G. L. c. 251, § 2(*a*) and (*b*) (1986 ed.), decisions are to be made "summarily." Even if Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), has application to the decision of the motion judge, we view the decision as "clearly erroneous" in view of the pervasive, preemptive coverage of the Federal Arbitration Act. We regard the summary decision to be made essentially as a matter of applying clear law to a documentary record, where no matter of credibility is involved and where any findings of fact must be implied from the decision. See discussion in *Wilson, petitioner,* 372 Mass. 325, 330 (1977); *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank,* 395 Mass. 614, 621-622 nn.11 & 12 (1985); 9 Wright & Miller, Federal Practice and Procedure, § 2577, at 701, & § 2587, at 747 (1971 & Supp. 1987, at 179 & 190-194).

[9] An arbitration provision "covering claims 'relating to' a contract is broader than . . . [one] covering claims 'arising out of' a contract." *International Talent Group, Inc.* v. *Copyright Management, Inc.,* 629 F.Supp. 587, 592 (S.D. N.Y. 1986). In the present case both terms are used in the arbitration provision.

ment by DWR and that Loche consulted and dealt with them as such. Broad language of the type used here "covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort . . . ." See *Acevedo Maldonado* v. *PPG Indus., Inc.*, 514 F.2d 614, 616-617 (1st Cir. 1975). In a matter based upon a securities account relationship with DWR, the same principles were held applicable. *Pierson* v. *Dean Witter Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir. 1984). See also *Blumberg* v. *Berland*, 678 F.2d 1068, 1070-1071 (11th Cir. 1982); *Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840, 845-846 (2d Cir. 1987); *Willis* v. *Shearson/American Express, Inc.*, 569 F.Supp. at 823-824.

The torts (e.g., fraud, conversion, misrepresentation) alleged here were of a nature closely involved (on Loche's own allegations) in a continuing investment relationship. They thus were sufficiently connected with that investment relationship to be regarded as subject to the arbitration provision.[10] We hold that the motion judge erred in not ordering Loche's claims against DWR to be submitted to arbitration as provided in the Federal Arbitration Act.

2. It is not shown on this record that either Kearney or Mallozzi was a party to Loche's agreement with DWR. DWR in its answer admits that Kearney was employed by it, but denies that Mallozzi had ever been employed by it. DWR does not assert in its answer that it or Loche has any arbitration agreement with either Kearney or Mallozzi, which could result in a separate proceeding which might be consolidated with the present case and referred to arbitration. Any reference to arbitration, on this record, must be confined to the dispute between Loche and DWR. The claims involving Kearney and Mallozzi

---

[10] Cases holding particular tort claims not covered by the arbitration provisions of an agreement include *Old Dutch Farms, Inc.* v. *Milk Drivers & Dairy Employees Local Union No. 584*, 359 F.2d 598, 601-602 (2d Cir. 1966, violation of labor statute asserted against union by employer not subject to arbitration provision of collective bargaining agreement); *Fuller* v. *Guthrie*, 565 F.2d 259, 261 (2d Cir. 1977, defamation); *McMahon* v. *RMS Electronics, Inc.*, 618 F.Supp. 189, 191-192 (S.D. N.Y. 1985, a defamation claim).

are to remain stayed pending the report of the arbitrators on the dispute between Loche and DWR, which, as a practical matter, may affect Loche's claims against the two alleged brokers.

3. Loche contends that he remains entitled under the arbitration provision (note 2, *supra*) to select which arbitration board should be the arbitrator, if this court decides that this dispute with DWR is arbitrable. Loche (see note 3, *supra*) refused DWR's request for arbitration on the grounds that the dispute was not subject to the arbitration provision and that a case then pending in the Supreme Court of the United States had a bearing on one aspect of his claims, later waived. See note 4, *supra*. The motion judge appeared to agree with Loche. We hold that the motion judge's decision was wrong, but we think that Loche's refusal on April 29, 1987, to arbitrate, in the circumstances, was not a waiver by Loche of the privilege of selecting the arbitrator, even though he could then have made a conditional selection.[11]

Taking into account the whole situation, we rule that, on or before the expiration of ten business days after receipt of the rescript in this case in the clerk's office at the Superior Court for Civil Business in Suffolk County, Loche may file with that clerk a request (with a copy to counsel for DWR) for reference of the dispute with DWR for arbitration either to the American Arbitration Association or to the Board of Arbitration of the New York Stock Exchange, as an election which shall be binding upon DWR. If either of the brokers wish to be joined in (and bound by) that arbitration, and Loche agrees to arbitration with them, the Superior Court judge hearing this matter

---

[11] We reach this view in part because of doubt whether Loche by refusing arbitration on April 29, 1987, intended to do more than to take a preliminary step in ascertaining whether the particular dispute (and what parts of it, if any) was arbitrable. He would not have been likely to submit a dispute of this character to an arbitration board to be selected by DWR between two available choices. There also may be doubt, in the circumstances, whether such a provision (in what seems to be a contract of adhesion), as a matter of public policy and general equitable considerations, should be enforced strictly with such brief time limits as are set out in the arbitration provision.

after remand may approve any reasonable method of arranging for their participation.

4. The denial on May 18, 1987, of the motion to compel arbitration is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*