240 N.J. Super. 370 (1990)
573 A.2d 484
YALE MATERIALS HANDLING CORPORATION, PLAINTIFF-RESPONDENT,
v.
WHITE STORAGE & RETRIEVAL SYSTEMS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 1990.
Decided April 26, 1990.
*371 Before Judges PRESSLER, GRUCCIO and LANDAU.
Robert M. Axelrod argued the cause for appellant (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys, Robert M. Axelrod, of counsel and on the brief).
Fredrick E. Sherman argued pro hac vice the cause for respondent (Schaff, Motiuk, Gladstone & Reed and Jones, Day, Reavis & Pogue, attorneys, Robert B. Reed, Robert W. Becker, Fredrick E. Sherman and Kenneth R. Puhala, of counsel and on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Defendant-appellant White Storage & Retrieval Systems, Inc. (White) appeals from orders denying its motions to compel arbitration and to stay, pending arbitration, a lawsuit brought by plaintiff-respondent Yale Materials Handling Corporation (Yale) in which Yale sought, inter alia, damages and a declaration that it properly cancelled a purchase order for a White automated materials handling system because of failure to timely deliver.[1]
The complete system which included both hardware and software necessary to operate the hardware was the subject of an agreement consisting of various documents executed at different times. Not atypically, these documents sometimes cross-referenced, and sometimes purported to incorporate, terms of each other, a common practice which occasionally loses in consistency what may be achieved in expedition.
Among the several documents executed was a one-page "contract" signed by White on September 21, 1988 and by Yale on September 29, 1988. The first paragraph of this document *372 reads: "Yale Materials Handling Corporation, hereafter referred to as buyer, contracts with White Storage & Retrieval Systems, hereafter referred to as seller, for the following integrated and automated material handling system." Terms of the contract were then set forth by reference to numbered attachments. The last paragraph of the contract states: "Buyer and Seller agree that the contract is governed by: Attachment 9  Terms and Conditions..."
Attachment 9 bears on its face the language:
Terms and Conditions
Software License Agreement
Thus, the Software License Agreement (SLA) in Attachment 9, although signed only by White in the record supplied to us, was at least facially incorporated as part of the contract executed on September 29, 1988. As more fully discussed below, resolution of this appeal does not require that we here determine whether this constituted a definitive incorporation of all provisions of the SLA for all purposes, but only whether the effect of this incorporation and certain language in the several documents was sufficient to create an ambiguity respecting arbitrability.
Paragraph 11.5 of the SLA provides:
Any controversy or claim arising out of or relating to this agreement or the breach of it shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The prevailing party in any action related to or arising under this agreement shall be entitled to reasonable attorneys' fees. Notwithstanding the above, the parties agree that each shall be entitled to seek injunctive relief from a court of competent jurisdiction notwithstanding the availability or pendency of any arbitration proceeding.
Paragraph 3.1 of the SLA provides:
All software listed in White's proposal dated 9/21/88 will be shipped to Customer within a reasonable time after execution by all parties of this agreement.
Paragraph 13.3 of the SLA provides:
This agreement and its exhibits contain the entire agreement between the parties hereto, superceding the previous agreements, representations, understanding *373 and negotiations related to this Software License Agreement. This Software License Agreement may not be amended other than by a writing signed by an authorized representative of each of the parties hereto. Notwithstanding the above, the provisions and enforceability of the contract between Yale Materials Handling Corporation and White Storage & Retrieval Systems dated September 19, [sic] 1988, are not diminished by the terms of this Software Agreement.
Other contractual documents were a letter from White dated September 21, 1988 to which were attached the SLA, the one-page "contract" and attachments; a White letter dated September 26, 1988 which included both the contract and an updated SLA; Yale's purchase order dated October 3, 1988 and its amendment dated November 15, 1988. The printed purchase order forms issued by Yale contain a clause considered by the trial judge and one clause which may not have been so considered. Paragraph 14 of the printed provisions of the purchase order gives Yale the right to cancel, "in addition to and not in lieu of any remedies which [it] may have in law or equity." We also note, however, that Paragraph 4 of the same printed provisions on the back of the purchase order makes reference generally to the buyer's "other rights and remedies" if delivery is not in accordance with the contract.
The trial judge concluded from the moving papers that:
In reviewing the totality of the circumstances, I find that the arbitration provision contained in paragraph 11.5 of the Software Licensing Agreement has limited scope and significance and it limits itself to the provisions of that agreement and not the general broad perameters [sic] of the parties.
I feel that it was not the parties intention because of the articles which may not be directly inconsistent in their text certainly lead to inconsistent results as indicated by this, the arguments and the briefs, which I might point out were very, very well done and put the matter in proper focus and perspective, so it was easy for the Court to distill these items. I find that the parties did not specifically agree with the provisions of arbitration in its broader scope apart from the Software Licensing Agreement and I find that the case of Cohen v. Allstate Insurance Company which was cited on page 8 of Yale's brief is the controlling language, and there was no agreement to arbitrate the entire contract.
Based upon those findings, White's initial motion to compel arbitration was denied.
*374 On motion for reconsideration the court concluded that the parties had anticipated execution of the later purchase order, that all of the items should be considered as comprising a single integrated contract, and that "it was not the intention of the parties to require arbitration of all disputes and controversy surrounding every item of the integrated contract." Thus, the trial judge declined to grant the stay or to compel arbitration because his review of the documents satisfied him that the parties' intention to preclude arbitration was expressed in the terms of the "integrated contract." To support his rulings the trial judge relied heavily upon our opinion in Cohen v. Allstate Insurance Co., 231 N.J. Super. 97, 555 A.2d 21 (App.Div. 1989), certif. den., 117 N.J. 87, 563 A.2d 846 (1989).
To the extent we declined in Cohen to enforce an insurance arbitration award, it was because the insurance contract plainly and unambiguously expressed the intention of the parties that either party could demand a trial if the arbitration award exceeded the minimum limit for liability specified by the financial responsibility laws of the State. We recognized that the court may not rewrite a contract to broaden the scope of arbitration, and that parties may agree to shape and limit the scope of arbitration in their contract. See Cohen at 101, 555 A.2d 21, and the authorities there cited.
Here, however, we do not read the several interrelated clauses to produce the kind of unambiguous expression found in Cohen. To the contrary, we read the above quoted document excerpts to be subject to the interpretation that Yale's September 29 signature on the September 21 contract "for the following integrated and automated material handling system" signified acceptance of the expressly incorporated SLA. As the SLA contained a software shipment provision, and a requirement for arbitration of disputes broadly phrased as "arising out of or relating to this agreement or the breach of it ..." (emphasis added), and as the parties' dispute arises out of the tardiness in delivery of a full operational system, including both *375 software and hardware, a persuasive argument exists for applicability of the SLA arbitration clause. Certainly the contractual language and the intent of the parties cannot be said clearly to point in the opposite direction. An arbitration provision covering claims "relating to" a contract is broader than one which covers claims merely arising out of a contract. Intern. Talent Group, Inc. v. Copyright Management, Inc., 629 F. Supp. 587, 592 (S.D.N.Y. 1986).
We refrain from deciding more than the absence of an unambiguous limitation upon arbitrarily because the answer to that question is all that is required to be determinative here.[2]
If New Jersey's strong policy to encourage arbitration is to be meaningful, our decision should favor arbitration where parties have clearly expressed by contract an intention that certain of their disputes should be resolved by arbitration but have ambiguously or less clearly identified those issues which need not be so resolved. This interpretation is consistent with our opinions in Kalman Floor Co., Inc. v. Joseph L. Muscarelle, Inc., 196 N.J. Super. 16, 26-27, 481 A.2d 553 (App.Div. 1984), aff'd o.b., 98 N.J. 266, 486 A.2d 334 (1985) and in Cohen, supra. In both cases we recognized that New Jersey law was consonant with federal law which liberally enforces arbitration agreements. See Kalman at 27, 481 A.2d 553; Cohen, 231 N.J. Super. at 100, 555 A.2d 21. In Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, 199, 432 A.2d 905 (1981), our Supreme Court looked "with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration."
*376 The federal cases, which are indisputedly here applicable by reason of the broad reach of the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq.,[3] strongly hold that ambiguities in agreements are to be resolved in favor of arbitration. See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Mitsubishi Motors v. Solar Chrysler-Plymouth, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
In Mitsubishi, 473 U.S. at 625, 105 S.Ct. at 3353, the United States Supreme Court stated:
The [Federal Arbitration] Act's centerpiece provision makes a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce ... valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (quoting 9 U.S.C.A. § 2).
The Mitsubishi Court further held:
Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the "federal substantive law of arbitrability to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital, 460 U.S. at 24, 74 L.Ed.2d 765, 103 S.Ct. 927. [additional citations omitted.] ... Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.
Id. at 626, 105 S.Ct. at 3353.
The Federal Arbitration Act constitutes a congressional declaration of a liberal federal policy favoring arbitration agreements and preempts state arbitration law for contracts involving interstate commerce. See Southland Corp. v. Keating, 465 U.S. 1, 10-16, 104 S.Ct. 852, 858-861, 79 L.Ed.2d 1, 11-16 *377 (1984); Loche v. Dean Witter Reynolds, Inc., 26 Mass. App. Ct. 296, 526 N.E.2d 1296, 1298-99 (1988). For an example of this, see Intern. Talent Group, Inc. v. Copyright Management, Inc., 629 F. Supp. 587 (S.D.N.Y. 1986), in which there were two agreements, one designated as the "hardware contract" and the other designated as the "software contract." Only the software contract contained an arbitration clause. The complaint sought recoveries in connection with each, and the court granted defendant's motion to stay and to compel arbitration of all claims based upon the arbitration clause in the software contract. As the claims related to the inadequacy of the system as a whole, the court recognized the intertwined claims regarding the two agreements and enforced, consistently with Moses H. Cone Memorial Hospital, supra, the Federal Arbitration Act's strong policy in favor of arbitration of the entire controversy.
We note in closing that Yale has argued that the SLA arbitration clause should be read to deal only with disputes which arise after the software has been delivered. We think that this interpretation is inconsistent with the language of Paragraphs 3.1 and 4.1 of the SLA which impose reasonable shipment obligations and set forth force majeure limitations upon liability for delay in shipment.
In accordance with the strong federal and state policy favoring arbitrability, we hold that the orders under review must be reversed. We remand for an entry of order staying proceedings pending arbitration.
NOTES
[1] A motion for reconsideration of the initial order of denial was also denied and is a subject of the present appeal.
[2] Quite apart from the question of arbitrability, we recognize that resolution of the parties' substantive dispute may require interpretive determinations of the entire agreement. We do not expressly or by implication suggest that the present opinion resolves those questions. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1421, 89 L.Ed.2d 648, 656 (1986).
[3] § 1 provides that "`commerce' ... means commerce among the several States ..." § 2 of the Act renders enforceable provisions in contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ..." 9 U.S.C.A., §§ 1, 2. White's facilities are in San Diego, California. Yale is located in Flemington, New Jersey. Negotiations and agreements were between those locations for a system to be delivered and made operational in Flemington.