SUPERIOR COURT 
 
 ROBERT SHEINKOPF (INDIVIDUALLY), SYBIL SHEINKOPF (INDIVIDUALLY), AND MARILYN SHEINKOPF NEWMAN AND LAURE SHEINKOPF AS TRUSTEES OF THE ROBERT SHEINKOPF FAMILY IRREVOCABLE TRUST v. PACIFIC LIFE INSURANCE COMPANY, SEAN M. FLYNN

 
 Docket:
 2384CV1704-BLS2
 
 
 Dates:
 April 18, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING THE MOTION BY SEAN FLYNN AND COMMONWEALTH EQUITY SERVICES TO COMPEL ARBITRATION OF ALL CLAIMS AGAINST THEM, AND DENYING THE REQUEST BY PACIFIC LIFE TO STAY ALL CLAIMS AGAINST IT
 
 

 Robert Sheinkopf, his spouse Sybil, and the Trustees of the Robert Sheinkopf Family Irrevocable Trust (who are the daughters of Robert and Sybil) seek a declaratory judgment that Pacific Life Insurance Company acted improperly in acting to terminate a “second to die” variable universal life insurance policy. The Sheinkopfs arranged for this policy to cover any estate tax due after Robert and Sybil have both died. In the alternative, plaintiffs claim that Pacific Life, the broker who sold the policy (Sean M. Flynn), and the business that employed the broker (Commonwealth Equity Services, LLC) are liable under various theories for harm allegedly caused by cancellation of the policy.
The Court finds and concludes that the claims against Flynn and Common- wealth are subject to mandatory arbitration, under contracts that plaintiffs entered into when the Sheinkopfs were arranging for this insurance coverage. The Court will therefore allow the motion by Flynn and Commonwealth to compel arbitration of the claims against them, and will exercise its discretion to dismiss those claims without prejudice.[1] The Court will deny Pacific Life’s follow-on request to stay the claims against it pending resolution of any arbitration against Flynn and Commonwealth.

--------------------------------------------

[1] A court may dismiss (rather than stay) claims that are subject to a mandatory arbitration agreement where no claims involving the same defendants must be resolved in court. See Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); accord, e.g., Miller v. Cotter, 448 Mass. 671, 686 (2007) (reversing order denying motion to compel arbitration, and ordering entry of judgment dismissing complaint and order compelling arbitration).

-1-

1. Procedural Posture. The Court must resolve the motion to compel arbitration by following the procedures mandated in the Massachusetts Arbitration Act, G.L. c. 251, § 1, et seq. (the “MAA”), including by making findings to resolve any factual disputes.
A party that is sued in a civil action may seek to enforce an arbitration agreement pursuant to G.L. c. 251, § 2, by serving and filing a motion for an order compelling arbitration. See Kauders v. Uber Technologies, Inc., 486 Mass. 557, 566 (2021).
“Where a party denies the existence of a valid agreement to arbitrate, either because the party denies that it entered into such an agreement or because it challenges the validity of such an agreement, the MAA’s procedures set forth in G.L. c. 251, § 2, govern the adjudication of a motion to compel arbitration.” McInnes v. LPL Fin., LLC, 466 Mass. 256, 261 (2013).
Since the plaintiffs dispute that the Trustees entered into any arbitration agreement, and deny that the arbitration agreements are enforceable in any case, the Court must “determine whether an enforceable agreement to arbitrate exists.” Kauder, supra.
“If there is a dispute as to a material fact” on a motion to compel arbitration, then the parties are entitled to an evidentiary hearing so that the judge may make findings of fact based on an appropriate record. See Johnson v. Kindred Healthcare, Inc., 466 Mass. 779, 781–782 (2014). But if there is no such dispute, then “the judge resolves the issue as a matter of law.” Id., quoting McInnes, supra. That is what MAA § 2(a) means when it says that “the court shall proceed summarily.” McInnes, supra.
It would be reversible error for the Court to treat the motion to compel arbitration as if it were a motion for summary judgment, and to deny the motion on the ground that material facts are in dispute, as the Sheinkopfs have requested. See McInnes, supra, at 264–265. Since some material facts are in dispute here, the Court must conduct an evidentiary hearing, resolve the disputed issues of fact, and determine “whether the claims should be resolved by an arbitrator or by a court.” Id. at 265. Plaintiffs’ assertion that it was improper for Flynn and Commonwealth to submit and rely upon evidence outside of the complaint is without merit. Id.
The evidence presented to the court consists of affidavits by Sean Flynn, Robert Sheinkopf, and Karen Donahue. The Flynn and Donahue affidavits authenticate various exhibits, including account agreements with Common-

-2-

wealth that were signed by each of the four plaintiffs and are attached to the Flynn affidavit. The complaint was not verified, no other affidavits were submitted, and the parties did not seek to present live testimony from any witnesses. The Court must therefore decide the motion to compel arbitration based the Flynn, Sheinkopf, and Donahue affidavits and the exhibits attached to the Flynn and Donahue affidavits. See McInnes, supra, at 265.
The parties waived any right to an evidentiary hearing involving live witness testimony; they did so by asking the Court to decide the pending motion based on the two affidavits and accompanying exhibits, without ever asking for an evidentiary hearing at which witnesses could be cross-examined and other evidence presented. See BPR Grp. Ltd. P’ship v. Bendetson, 453 Mass. 853, 869 n.24 (2009); Roda Realty Tr. v. Bd. of Assessors of Belmont, 385 Mass. 493, 495 (1982). “A party who seeks an evidentiary hearing must specifically request an evidentiary hearing;” otherwise any right to a hearing is waived. J.P. Const. Co. v.  Stateside Builders,  Inc., 45 Mass. App. Ct.  920,  921 (1998) (rescript);  accord Tatar v. Schuker, 70 Mass. App. Ct. 436, 451 (2007).
2. Challenges Raised by the Plaintiffs. “Arbitration is strictly ‘a matter of consent,’ … and thus ‘is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration’ ” (emphasis in original). Granite Rock Co. v. International Broth. of Teamsters, 561 U.S. 287, 299 (2010), quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989) (“matter of consent”), and First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (“only those disputes”).
The Court must resolve the plaintiffs’ arguments about whether their claims are subject to mandatory arbitration. The threshold issue of whether a contract requires the parties to arbitrate a particular dispute “is ordinarily for a court to decide, and courts will not defer that issue to arbitration absent ‘clea[r] and unmistakabl[e] evidence’ that the parties agreed to do so” (brackets in original). Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 808, rev. denied, 473 Mass. 1112 (2016), quoting Massachusetts Highway Dept. v. Perini Corp., 83 Mass. App. Ct. 96, 100-01, rev. denied, 465 Mass. 1107 (2013), and First Options, 514 U.S. at 944. There is no evidence that the parties in this action agreed to arbitrate any question of whether the claims against Flynn and Commonwealth are arbitrable.
The Sheinkopfs and the Trustees seek to avoid arbitration with Flynn and Commonwealth on several grounds. None has merit.

-3-

2.1. Existence of Binding Arbitration Agreements. The evidentiary record establishes that all four plaintiffs entered into valid and binding arbitration agreements with Commonwealth.
2.1.1. Legal Background. “[T]o create an enforceable contract, there must be agreement between the parties on the material terms of the contract, and the parties must have a present intention to be bound by that agreement.” K&K Development, Inc., v. Andrews, 103 Mass. App. Ct. 338, 344 (2023), quoting Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000).
In other words, “for there to be an enforceable contract, there must be both reasonable notice of the terms and a reasonable manifestation of assent to the terms.” Rivera v. Stetson, 103 Mass. App. Ct. 187, 189 (2023), quoting Kauders v. Uber Techs., Inc., 486 Mass. 557, 572 (2021).
If a party is given reasonable notice that they are being asked to enter into a binding arbitration agreement and an adequate opportunity to review those terms, and the party then signs a document indicating that they accept those terms, then the arbitration agreement is valid and enforceable “even if the party did not actually view the agreement.” Id. at 190, quoting Archer v. Grubhub, Inc., 490 Mass. 352, 361 (2022). “So long as the party is required to make some indication of assent, the fact that the party chooses not to read the agreement does not render it unenforceable.” Archer, supra, at 362.
2.1.2. Findings of Fact. It is undisputed, at least for the purpose of deciding the motion to compel arbitration, that Robert and Sybil Sheinkopf purchased the life insurance policy at issue in this case from Pacific Life in April 2006, and that the policy’s beneficiary was the Robert Sheinkopf Family Irrevocable Trust. Plaintiffs allege these facts in their complaint. Flynn and Commonwealth repeat and accept these allegations in the memorandum in support of their motion to compel.
Based on the evidence presented, the Court further finds that:
o On April 12, 2006, in connection with their purchase of the disputed policy, Robert and Sybil Sheinkopf both signed a Commonwealth Financial Network Account Form. This form stated, immediately above the signature block, that the form constituted a contract, and that the contract contained additional terms on attached pages, “including a predispute arbitration agreement and a customer agreement.” The form signed by the Sheinkopfs also stated, immediately above the signature lines, that “by my signature below,

-4-

I acknowledge being in receipt of, reading, understanding, and being bound to the terms of these any agreements contained here within.”
o At about the same time, also on April 12, 2006, Marilyn Sheinkopf Newman and Laure Sheinkopf, acting in their capacities as trustees of the Robert Sheinkopf Family Irrevocable Trust, both signed an identical Account Form, as well as a Supplement to their parents’ Account Form. The account form signed by the Trustees was identical to the account form signed by Robert and Sybil. And the supplement signed by the Trustees contained language that was the same in substance as the language quoted above.
o The Court credits the testimony in Robert Sheinkopf’s affidavit that all four plaintiffs signed account forms, and that when they did so the forms “contained several pages, attached after the signature page, which contained dense legal terms and conditions in small type font.” The Court finds that these additional pages included the arbitration agreement, and that Flynn and Commonwealth provided copies of this arbitration agreement to each plaintiff before they signed the account forms.
o The predispute arbitration agreement that was referred to in and attached to these account forms is a one-page document titled “Arbitration Disclosure and Agreement.” It states that, in consideration of opening one or more accounts with Commonwealth, the signatories “agree that any disagreement between Commonwealth and [them] shall be settled by arbitration, in accordance with the current rules of the National Association of Securities Dealers, Inc. (NASD), and the governing laws of the Commonwealth of Massachusetts.”
o This arbitration agreement also provides, among other things, that:
(I) “All parties to this Agreement are giving up the right to sue one another in court, including the right to a trial by jury;” (ii) “The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement;” and (iii) “this Agreement to arbitrate means that Commonwealth can compel the transfer of any and all claims” made in court to arbitration.

-5-

o Each plaintiff was given reasonable notice of the terms of Commonwealth’s standard arbitration agreement before signing the account forms. All four plaintiffs were provided with a copy of and given an opportunity to review the Arbitration Disclosure and Agreement before they signed the account forms in which they confirmed having read and understood this part of their contract with Commonwealth.
o Each of the four plaintiffs provided a reasonable manifestation of their assent to the terms of Commonwealth’s standard arbitration agreement by signing account forms that expressly referred to and incorporated those terms.
Based on these findings, the Court concludes that each of the plaintiffs is bound by their mandatory arbitration agreements with Commonwealth because each of them was given reasonable notice of the terms of the arbitration agreements before signing the account forms, and each of them reasonably manifested their assent to those terms by signing the account forms. See Rivera, 103 Mass. App. Ct. at 189–190.
Whether the plaintiffs paid attention to or understood the terms of the arbitration agreement when they signed the account forms is beside the point. “The general rule is that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not.” Fergus v. Ross, 477 Mass. 563, 569 (2017), quoting Haufler v. Zotos, 446 Mass. 489, 501 (2006). This principle applies with full force to arbitration agreements. See Miller v. Cotter, 448 Mass. 671, 680 (2007).
2.2. Flynn May Enforce the Arbitration Agreements. Flynn may compel the plaintiffs to arbitrate their claims against him personally, even though Flynn was not a party to the arbitration agreements between Commonwealth and each of the plaintiffs.[2]

--------------------------------------------

[2] Flynn’s argument, during today’s hearing, that he was a party to the arbitration agreements because he signed each account form as Commonwealth’s representative is without merit. An agent that enters into a contract on behalf of “a disclosed principal does not become a party to the contract.” Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 672-673 (2001), quoting Porshin v. Snider, 349 Mass. 653, 655 (1965) and Restatement (Second) of Agency, § 320 and comment a (1958).

-6-

Someone who was not a party to an arbitration agreement (a “nonsignatory”) may compel arbitration of claims brought by someone who did enter into the agreement (a “signatory”) under various theories, including equitable estoppel. See Machado v. System4 LLC, 471 Mass. 204, 209–211 (2015).
For example, where a plaintiff that entered into an arbitration agreement asserts claims against a nonsignatory based on “allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract,” the nonsignatory can compel arbitration of those claims. Id. at 211, quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 795, 798 (8th Cir 2005).
Here, as in Machado, the plaintiffs have lumped Flynn and Commonwealth together, asserting three claims against these two defendants collectively, and not asserting any claim against Flynn that they do not also bring against Commonwealth. Cf. Machado, 471 Mass. at 215–216. Plaintiffs allege that Commonwealth is liable for breach of contract, negligence, and breach of fiduciary duty based solely on acts or omissions of Flynn, asserting in each of these claims that “Mr. Flynn was an employee of Commonwealth, and therefore Commonwealth is responsible for his actions under the doctrine of respondeat superior.”
Since plaintiffs “have pointedly alleged concerted misconduct” between Flynn and Commonwealth, Flynn “can compel arbitration” pursuant to the arbitration agreements that each plaintiff entered into with Commonwealth. See Id. at 216; accord Silverwood Partners, LLC v. Wellness Partners, LLC, 91 Mass. App. Ct. 856, 861–862 (2017).
Indeed, Flynn would be entitled to compel arbitration even if the plaintiffs had not also asserted claims against Commonwealth. The general rule is that “an agent is entitled to the protection of her principal’s arbitration clause when the claims against her are based on her conduct as an agent.” Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 11 (1st Cir. 2014). In other words, when a principal is a party to “a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.” Id., quoting Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993). Since “a corporate entity or other business can only operate through its employees,” it follows that “an arbitration agreement would be a meaningless arrangement if its terms did not extend to them.” Id.

-7-

2.3. The Arbitration Agreements Cover Tort Claims. Plaintiffs’ argument that their arbitration agreements do not cover tort claims, and therefore do not apply to their claim against Flynn and Commonwealth for negligence, is without merit.
Under the Federal Arbitration Act, “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.” Archer, 490 Mass. at 355, quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24–25 (1983).
The plaintiffs’ contracts require them to arbitrate any claim concerning “any disagreement between Commonwealth” and one or more of the plaintiffs. This provision is very broad. Since it is not limited by its terms to contract claims, it applies with full force to claims for negligence or breach of fiduciary duty. See Loche v. Dean Witter Reynolds, Inc., 26 Mass. App. Ct. 296, 303–304 (1988) (agreement to arbitrate “any controversy … arising out of or relating to” contract between investor and brokerage firm applied to tort claims arising from parties’ investment relationship).
When applying such a broad arbitration agreement, “it is immaterial whether [the] claims are in contract or in tort.” Id. at 304, quoting Acevedo Maldonado v. PPG Indus., Inc., 514 F.2d 614, 616 (1st Cir. 1975); accord, e.g., Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 378 (1st Cir. 2011) (agreement to arbitrate “any dispute that may arise under” contract applied to claim of fraud in performance of contract); CD Partners, LLC v. Gizzle, 424 F.3d 795, 801 (8th Cir. 2005) (agreement to arbitrate “any controversy, claim, or breach arising out of or relating to” contract applied to tort claims concerning contract performance).
2.4. The Lack of an Arbitration Agreement with Pacific Life Is Irrelevant. Plaintiffs’ assertion that it would be inefficient to arbitrate some of their claims, when related claims against Pacific Life are not subject to mandatory arbitration, is unavailing. The Court may not decline to enforce the mandatory arbitration agreements that plaintiffs entered into with Commonwealth on this ground. See Miller, 448 Mass. at 684–686.
“[I]f a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.” KPMG LLP v. Cocchi, 565 U.S. 18, 19 (2011). This result is mandated by federal law. “[W]hen a complaint contains both arbitrable and nonarbitrable claims, the [Federal Arbitration] Act requires courts to ‘compel arbitration of …

-8-

arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.’ ” Id. at 22, quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985).
It is not ideal that some of plaintiffs’ claims may be resolved in arbitration while others are resolved in court. But any hardship to plaintiffs from being “forced to resolve these related disputes in different forums … occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement” (emphasis in original). Moses H. Cone Memorial Hosp., 460 U.S. at 20. If being forced to proceed against Pacific Life in one forum (state court) and against Flynn and Commonwealth in another (arbitration) “is inconvenient, duplicative, or inefficient,” that is “the necessary result of the choice that [plaintiffs] made” when they accepted the arbitration agreements. Miller, 448 Mass. at 685–686.
2.5. The Procedural Requirements Are Sufficiently Definite. Plaintiffs contend that Flynn and Commonwealth may not compel arbitration because the arbitration forum and logistics are unclear. The Court disagrees.
The proper forum for arbitration is before the Financial Industry Regulatory Authority (“FINRA”). The arbitration agreements at issue here specified that arbitrable claims would be decided by the National Association of Securities Dealers (“NASD”), under current NASD Rules. FINRA is the successor to the NASD. McInnes, 466 Mass. at 259 n.4. Since the NASD is “now FINRA,” the Court may, and does, order that plaintiffs must arbitrate their claims against Flynn and Commonwealth before FINRA. Id. at 267 n.10; accord, e.g., Lewis v. UBS Fin. Svcs., Inc., 818 F.Supp.2d 1161, 1166 (N.D. Cal. 2011).
The plaintiffs’ arguments that there is no way to tell what FINRA rules will govern their arbitration proceeding, how many arbitrators will decide the matter, and who will bear the cost of the proceeding are unavailing. These issues are all addressed by the applicable FINRA rules.
First, Rule 12101 of the FINRA Code of Arbitration Procedure for Customer Disputes provides that this set of arbitration rules will apply “to any dispute between a customer and a member” of FINRA that is submitted to arbitration under rule 12200, meaning that it is submitted under an arbitration agreement.[3] This is the arbitration code that would apply to plaintiffs’ claims against Flynn and Commonwealth. See McInnes, 466 Mass. at 267 n.10 (agreement to arbitrate

--------------------------------------------

[3] See https://www.finra.org/rules-guidance/rulebooks/finra-rules/12101 .

-9-

claim against broker who sold variable universal life insurance policy, and to do so under NASD rules, required arbitration under FINRA’s Code of Arbitration Procedure for Customer Disputes)
Second, the FINRA rules provide that claims of $50,000 or less will be decided by one arbitrator, claims of $50,000 to $100,000 will be decided by one arbitrator unless the parties agree to three arbitrators, and claims seeking more than $100,000 or seeking an unspecified amount will be decided by a panel of three arbitrators.[4]
Third, FINRA Rule 12902 provides that the arbitration panel will decide how much of the total hearing session fee must be paid by each party.[5]
Any disputes about these or other procedural issues concerning any arbitration claim by the plaintiffs must be raised before and decided by the arbitrators.
2.6. The Arbitration Agreements Were Not Unconscionable. Finally, plaintiffs’ argument that the arbitration agreements are not enforceable because they are unconscionable is also without merit.
“Historically, a contract was considered unconscionable if it was ‘such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.’ ” Miller, 448 Mass. at 679, quoting Hume v. United States, 132 U.S. 406, 411 (1889), quoting in turn Earl of Chesterfield v. Janssen, 38 Eng. Rep. 82, 100 (Ch. 1750). “Later, a contract was determined unenforceable because unconscionable when ‘the sum total of its provisions drives too hard a bargain for a court of conscience to assist.’ ” Id., quoting Waters v. MIN Ltd., 412 Mass. 64, 66 (1992), quoting in turn Covich v. Chambers, 8 Mass. App. Ct. 740, 750 n.13 (1979).
There was nothing crazy about agreeing to arbitrate any claims against Commonwealth. Nor are the terms of a typical arbitration agreement so one- sided as to constitute an unenforceably unfair bargain.
“To prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).” Bourisquot v. United Healthcare

--------------------------------------------

[4] See https://www.finra.org/rules-guidance/rulebooks/finra-rules/12401 .
[5] See https://www.finra.org/rules-guidance/rulebooks/finra-rules/12902 .

-10-

Services of Delaware, Inc., 98 Mass. App. Ct. 624, 630 (2020), quoting Machado v.
System4 LLC, 471 Mss. 204, 218 (2015).
These arbitration agreements were not substantively unconscionable, as they applied equally to both sides and preserved for the arbitrator all rights and remedies that would be available if the same claims were asserted in court. See Miller, 448 Mass. at 680. “The purpose and effect of the agreement are not unconscionable and are entirely consistent with State and Federal policies that heavily favor submitting disputes to binding arbitration.” Rivera, 103 Mass. App. Ct. at 192 (internal quotation marks omitted).
Plaintiffs’ argument during today’s hearing that the Court should determine whether the arbitration agreements are substantively unconscionable as applied today, and not based on conditions when plaintiffs entered into these contracts, is without merit. “[S]ubstantive unconscionability ‘examines the relative fairness of the obligations assumed at the time the contract was made,’ ” not at some later time when the contract has bite. Lourenco v. Russell Cellular, Inc., 2022 WL 13671467, at *3 (Mass. App. Ct. Oct. 24, 2022) (unpublished Rule 23.0 decision), quoting Manfredi v. Blue Cross and Blue Shield of Kansas City, 340 S.W.3d 126, 133–134 (Mo. Ct. App. 2011); accord  Miller,  448 Mass. at 679–680 (test for unconscionability is “whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party); see also NPS, LLC v. Minihane, 451 Mass. 417, 420–421 (2008) (in deciding whether liquidated damages provision was unconscionably excessive, court must “look to the circumstances at the time of contract formation”).
Nor was there any procedural unconscionability. Plaintiffs have shown, and the Court finds, that the arbitration agreement was a contract of adhesion, meaning that it was “‘drafted unilaterally” by Commonwealth “and then presented on a ‘take-it-or-leave-it’ basis” to the plaintiffs who had “no real opportunity to bargain about its terms.’ ” Empire Loan of Stoughton, Inc. v. Stanley Convergent Sec. Solutions, Inc., 94 Mass. App. Ct. 709, 715 (2019), quoting Restatement (Second) of Conflict of Laws § 187, comment b (1971). But the fact that the arbitration agreement was an adhesion contract does not mean that it was procedurally unconscionable and “is insufficient to render an arbitration agreement invalid.” McInnes, 466 Mass. at 266.
3. Pacific Life’s Request for a Stay. Pacific Life filed a “response” to the motion by Flynn and Commonwealth to compel arbitration, in which Pacific Life argued that if this motion is granted then the claims against Pacific Life should

-11-

be stayed until the arbitration is completed. Pacific Life never filed any motion making that request, as required. See Mass. R. Civ. P. 7(b) (“[a]n application to the court for an order shall be by motion”).
The Court will exercise its broad discretion to deny this request. That plaintiffs’ claims against Flynn and Commonwealth are subject to mandatory arbitration is no reason to delay resolution of plaintiffs’ claims against Pacific Life. The Court recently determined that plaintiffs are entitled to a speedy trial under G.L. c. 231, § 59F, because Robert and Sybil Sheinkopf are both over 80 years old. It will not delay resolution of the claims against Pacific Life merely because Pacific Life prefers that plaintiffs try first to recover from Flynn and Commonwealth.
ORDER
The motion by Sean M. Flynn and Commonwealth Equity Services, LLC, to compel arbitration of all claims against them is allowed. The Court orders that all claims against Mr. Flynn and Commonwealth Equity Services are hereby dismissed without prejudice because they must be resolved by arbitration before the Financial Industry Regulatory Authority, known as FINRA, pursuant to FINRA’s Code of Arbitration for Customer Disputes. The follow- on request by Pacific Life Insurance Company, to stay all claims against it until a final decision is issued in any arbitration against Mr. Flynn and Commonwealth Equity Services, is denied.