JANE B. McINNES vs. LPL FINANCIAL, LLC, & another.[1]

Barnstable. April 4, 2013. - August 12, 2013.

Present: IRELAND, C.J., SPINA, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Federal Arbitration Act. Massachusetts Arbitration Act. Consumer Protection Act,* Arbitration. *Constitutional Law,* Federal preemption. *Federal Preemption. Arbitration,* Consumer Protection Act, Stay of judicial proceedings. *Contract,* Arbitration. *Statute,* Federal preemption.

Discussion of the application of the Massachusetts Arbitration Act and the Federal Arbitration Act. [260-263]

In a civil action brought in the Superior Court by a plaintiff investor for, inter alia, violations of G. L. c. 93A, the judge erred in denying the motion of the defendants (a financial planner and his employer) for a stay of court proceedings and an order compelling the parties to proceed to arbitration, on the ground that the plaintiff could not be compelled to arbitrate a claim of an unfair or deceptive act or practice in violation of G. L. c. 93A, § 9, where, given that there was no dispute the financial services contract between the parties involved interstate commerce (i.e., the plaintiff resided in Massachusetts and the defendant financial planner worked in Pennsylvania), the Federal Arbitration Act governed any arbitration agreement between them and displaced any conflicting State law prohibiting outright the arbitration of a particular type of claim. [263-264]

In a civil action arising from a plaintiff investor's claims against the defendant financial planner and his employer for, inter alia, fraud, a Superior Court judge erred in denying the defendants' second motion to stay court proceedings and compel arbitration, on the ground that material disputes of fact remained as to whether the plaintiff had entered an arbitration agreement and whether any such agreement had been obtained by fraud, where the judge instead should have ordered an expedited evidentiary hearing to resolve the disputed issues of fact and summarily determine whether the claims should be resolved by an arbitrator or the court [264-265]; and where based on the undisputed evidence before the judge, the judge should have allowed the motion to compel arbitration, i.e., the plaintiff executed a valid arbitration agreement requiring her to arbitrate the claims in her complaint [265-267].

CIVIL ACTION commenced in the Superior Court Department on September 28, 2011.

[1]Karl G. McGhee, Jr. A suggestion of his death was filed in this court on March 28, 2013.

Motions for stay of proceedings and to compel arbitration were heard by *Christopher J. Muse*, J., and *Gary A. Nickerson*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Thomas J. Carey, Jr.* (*Michael A. Collora & Justin P. O'Brien* with him) for the defendant.

*Bruce A. Bierhans* for the plaintiff.

*John Pagliaro & Martin J. Newhouse*, for New England Legal Foundation & another, amici curiae, submitted a brief.

*John R. Snyder & S. Elaine McChesney*, for American Financial Services Association, amicus curiae, submitted a brief.

. GANTS, J. In *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 826-827 (1982) (*Hannon*), we held that, even where a consumer executed a valid contract agreeing to arbitrate all disputes, a plaintiff may not be compelled to arbitrate a claim alleging an unfair or deceptive trade practice in violation of G. L. c. 93A, § 9. We hold today that such claims must be referred to arbitration where the contract involves interstate commerce and the agreement to arbitrate is enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2006) (FAA). Because the plaintiff and defendants in this case entered into a valid contract in which they agreed to settle all controversies related to the plaintiff's financial account by arbitration, and because the arbitration agreement is governed by the FAA, we conclude that the motion judges erred in declining to stay judicial proceedings and order the matter to proceed to arbitration.[2]

*Background.* In September, 2011, the plaintiff, Jane B. McInnes, filed a complaint in Superior Court, asserting claims against LPL Financial, LLC (LPL), and Karl G. McGhee, Jr., for fraud; intentional misrepresentation; breach of fiduciary duty; intentional infliction of emotional distress; and violations of G. L. c. 110A, § 410 (Uniform Securities Act), and G. L. c. 93A (consumer protection act).[3] As alleged in the plaintiff's complaint, McGhee was a financial advisor, registered broker,

---

[2]We acknowledge the amicus briefs of American Financial Services Association, and New England Legal Foundation and Associated Industries of Massachusetts.

[3]The complaint alleges a violation of G. L. c. 93A, § 11, which provides a

and manager at LPL, who assumed the role of financial planner for the plaintiff. In 1998, after conducting an analysis of the plaintiff's investment portfolio, McGhee represented that a variable universal life insurance policy (policy) with a face value of $2,000,000 was a suitable investment for her. Relying on Mc-Ghee's "knowledge, expertise and representations," the plaintiff purchased the policy. Although she had an annual fixed income of only approximately $30,000, the plaintiff paid a total of $330,173.97 in premiums on the policy between July, 1998, and July, 2006. In 2000, unbeknownst to the plaintiff, McGhee established an irrevocable trust in the plaintiff's name, and identified himself as the both the owner and trustee of the policy. In May, 2009, McGhee informed the plaintiff that the policy was going to lapse in June because the outstanding indebtedness exceeded the cash value of the policy, and told her that he was going to sell the policy to prevent it from lapsing. In November, the plaintiff met with a new financial advisor who, after analyzing the policy and the plaintiff's investment portfolio, informed her that the policy was never a suitable investment for her, had lapsed in June, and retained no value.

The defendants moved pursuant to G. L. c. 251, § 2, of the Massachusetts Arbitration Act (MAA), for a stay of the court proceedings and an order compelling the parties to proceed to arbitration. The motion was supported by McGhee's affidavit, where he attested that the plaintiff opened a brokerage and individual retirement account at LPL in 1996, and signed the "opening account" forms that required the parties to elect to

civil remedy to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by [G. L. c. 93A, § 2]." However, the plaintiff's demand letter that preceded the filing of the complaint alleged a violation of G. L. c. 93A, § 9, which is the comparable claim brought by a plaintiff who is not herself engaged in the conduct of trade or commerce. Because the plaintiff alleged in her complaint that the defendants were engaged in trade or commerce in the Commonwealth but did not allege that she was engaged in trade or commerce, we understand the complaint to allege a violation of § 9, not § 11. See *Santana* v. *Registrars of Voters of Worcester,* 384 Mass. 487, 491 (1981), *S.C.,* 390 Mass. 353 (1983) (complaint sufficient if plaintiff entitled to any form of relief, even if specific relief demanded inappropriate).

resolve any dispute in arbitration. Neither he nor LPL could locate these forms. However, he was able to locate in LPL's files a new account application and agreement, signed by the plaintiff on February 7, 2003, where in bold print directly above her signature, it states: "I further certify . . . that I have reviewed and accept the Master Account Agreement and the Pre-Dispute Arbitration Agreement stated in the last section of the Master Account Agreement." The "Pre-Dispute Arbitration Agreement" (arbitration agreement) provides, in pertinent part:

> "In consideration of opening one or more accounts for you, you agree that any controversy between LPL arising out of or relating to your account, transactions with or for you, or the construction, performance, or breach of this agreement whether entered into prior, on or subsequent to the date hereof, shall be settled by arbitration in accordance with the rules, then obtaining of the National Association of Securities Dealers, Inc."[4]

The judge denied the motion, concluding that "notwithstanding the [a]rbitration [a]greement, none of Plaintiff's claims can be compelled to arbitration." Relying on *Hannon, supra* at 816, the judge stated that the arbitration agreement cannot be enforced because claimants under G. L. c. 93A, § 9, are not required to submit to arbitration, and the plaintiff's other claims, both at common law and pursuant to G. L. c. 110A, § 410, all arise from McGhee's alleged conduct as a financial planner and are "inexorably intertwined with her [G. L. c.] 93A claim."

The defendants subsequently filed a second motion to stay proceedings and compel arbitration, this time arguing that the arbitration agreement is governed by the FAA and that the FAA, under the doctrine of Federal preemption, requires enforcement of arbitration agreements regardless of State statutes or judicial decisions that declare them unenforceable. A different judge denied this motion after hearing, finding that, "[t]here remains a viable issue as to whether the arbitration clause 1) exists (the original agreement cannot be found) and 2) was obtained by

---

[4]The National Association of Securities Dealers, Inc. is the predecessor organization to the Financial Industry Regulatory Authority, Inc. (FINRA).

fraud."[5] The defendants exercised their entitlement to an inter-
locutory appeal from an order denying an application to compel
arbitration, and appealed both orders. See G. L. c. 251, §§ 2,
18; *Warfield* v. *Beth Israel Deaconess Med. Ctr., Inc.*, 454 Mass.
390, 395 (2009) (*Warfield*). We granted their application for
direct appellate review.

*Discussion.* 1. *Legal framework.* Before we address the orders
denying the defendants' motion to stay proceedings and compel
arbitration, we set forth the legal framework that governs such
motions. Arbitration agreements in Massachusetts are governed
by the MAA, G. L. c. 251, §§ 1 et seq., and where the contract
involves a transaction affecting interstate commerce, by the
FAA, 9 U.S.C. §§ 1 et seq. See *Warfield, supra* at 394. "In all
relevant respects, the language of the FAA and the MAA provid-
ing for enforcement of arbitration provisions are similar, and we
have interpreted the cognate provisions in the same manner."
*Id.*, citing *Miller* v. *Cotter*, 448 Mass. 671, 678-679 (2007)
(*Miller*). Under both G. L. c. 251, § 1, and 9 U.S.C. § 2 (2006),
a written agreement (or provision in a written agreement) to
submit to arbitration any dispute between the parties, whether
existing or arising in the future, "shall be valid . . . save upon
such grounds as exist at law or in equity for the revocation of
any contract."[6] Under these statutory provisions, where the par-
ties have executed an arbitration agreement and the agreement

---

[5]The judge did not explain his findings in a written decision, and we do not
know whether he orally explained them because the record does not include a
transcript of the hearing on this motion.

[6]General Laws c. 251, § 1, provides, in pertinent part:

"A written agreement to submit any existing controversy to arbitration
or a provision in a written contract to submit to arbitration any controversy
thereafter arising between the parties shall be valid, enforceable and ir-
revocable, save upon such grounds as exist at law or in equity for the
revocation of any contract."

Title 9 U.S.C. § 2 (2006) provides, in pertinent part:

"A written provision in . . . a contract evidencing a transaction involv-
ing [interstate] commerce to settle by arbitration a controversy thereafter
arising out of such contract, . . . or the refusal to perform the whole or
any part thereof . . . shall be valid, irrevocable and enforceable, save
upon such grounds as exist at law or in equity for the revocation of any
contract."

is not invalid on legal or equitable grounds, the agreement to arbitrate is enforceable against the parties. See *AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1740, 1745-1746 (2011). See also *Miller, supra.*

Where a party denies the existence of a valid agreement to arbitrate, either because the party denies that it entered into such an agreement or because it challenges the validity of such an agreement, the MAA's procedures set forth in G. L. c. 251, § 2, govern the adjudication of a motion to compel arbitration. *Warfield, supra* at 395. *St. Fleur* v. *WPI Cable Sys./Mutron*, 450 Mass. 345, 352 (2008) (*St. Fleur*).[7] Section 2 (*a*) provides:

> "A party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement described in section one may apply to the superior court for an order directing the parties to proceed to arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration; otherwise, the application shall be denied."

To "proceed summarily" means "that a judge determines whether there is a dispute as to a material fact; and, if there is not such a dispute, the judge resolves the issue as a matter of law; but, if there is such a dispute, the judge conducts an expedited evidentiary hearing on the matter and then decides the issue." *St. Fleur, supra* at 353.[8] See *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("a gateway dispute about whether

---

[7]The procedural counterpart under the Federal Arbitration Act (FAA), 9 U.S.C. § 4 (2006), provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court" and, therefore, does not apply to a motion to compel arbitration brought in a Massachusetts State court. See *St. Fleur* v. *WPI Cable Sys./Mutron*, 450 Mass. 345, 351-352 (2008).

[8]"The absence of a right to a jury trial in these circumstances is consistent with a party's rights in nonarbitration contractual disputes. A motion to compel arbitration is in essence a suit in equity to compel specific performance of an arbitration agreement. . . . Typically, there is no right to a jury trial for actions seeking specific performance of a contract or for actions challenging the existence of a contract on the ground of fraudulent inducement. . . . However, a judge, in her discretion, may grant a jury trial." (Citations and footnotes omitted.) *St. Fleur* v. *WPI Cable Sys./Mutron, supra* at 353.

the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide").

Although the MAA governs the procedures to be applied where an issue arises regarding the arbitrability of a dispute, where the underlying contract affects interstate commerce, the arbitration agreement is governed by the FAA and the substantive law to be applied is Federal. See *Southland Corp.* v. *Keating*, 465 U.S. 1, 12 (1984), quoting *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 25 & n.32 (1983) (FAA "creates a body of federal substantive law" that is applicable in both State and Federal court). See also *Preston* v. *Ferrer*, 552 U.S. 346, 349 (2008) (FAA "rests on Congress' authority under the Commerce Clause" and "calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration"); *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445-446 (2006).

Under substantive Federal arbitration law, the so-called "saving clause" of 9 U.S.C. § 2, which permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," allows "agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC* v. *Concepcion, supra* at 1746, quoting *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996). In applying the saving clause, a judge must sever the arbitration provision from the remainder of the contract, and determine the validity of the arbitration provision itself, leaving the validity of the remainder of the contract (if the arbitration provision is valid) to be decided by the arbitrator. *Nitro-Lift Techs., L.L.C.* v. *Howard*, 133 S. Ct. 500, 503 (2012); *Buckeye Check Cashing, Inc.* v. *Cardegna, supra* at 445-446. "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC* v. *Concepcion, supra* at 1748. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:

The conflicting rule is displaced by the FAA." *Id.* at 1747. See *Nitro-Lift Techs., L.L.C.* v. *Howard, supra* at 504 (where specific State statute conflicts with FAA, FAA preempts State statute through supremacy clause, U.S. Const., art. VI, cl. 2). See also *Marmet Health Care Ctr., Inc.* v. *Brown*, 132 S. Ct. 1201, 1203-1204 (2012) ("West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA"); *Miller, supra* at 678-79 ("those State acts that seek to limit the enforceability of arbitration contracts are preempted by the Federal Act").

2. *First order.* In denying the defendants' first motion to stay proceedings and compel arbitration, the judge relied on controlling precedent in *Hannon, supra* at 826-827, where this court held that, even where the contractual parties agreed to arbitrate all disputes, a judge may not compel a plaintiff to arbitrate a claim of an unfair or deceptive act or practice in violation of G. L. c. 93A, § 9. The court in *Hannon, supra* at 826, concluded that the Legislature intended to preclude an order staying judicial proceedings and compelling arbitration of these claims by its enactment of G. L. c. 93A, § 9 (6), inserted by St. 1973, c. 939, which states, in pertinent part:

> "Any person entitled to bring an action under [G. L. c. 93A, § 9,] shall not be required to initiate, pursue or exhaust any remedy established by any regulation, administrative procedure, local, state or federal law or statute or the common law in order to bring an action under [§ 9] or to obtain injunctive relief or recover damages or attorney's fees or costs or other relief as provided in this section."

While the court recognized that "arbitration pursuant to a contract does not fall neatly into the categories of remedies listed in G. L. c. 93A, § 9 (6)," the court concluded that arbitration was "comprehended within either 'common law' or statutory remedies." *Hanlon, supra.* Even though the underlying contract that included the arbitration provision concerned the construction of an in-ground swimming pool, and may have involved interstate commerce, the court in *Hannon* made no reference to the FAA, or to whether Federal substantive law under the FAA

should govern the arbitrability of these claims. *Id.* at 814, 826-827. We need not decide whether the *Hannon* opinion correctly interpreted G. L. c. 93A, § 9 (6), or correctly understood that the Legislature intended through its enactment to preclude a court from compelling arbitration of a consumer claim under G. L. c. 93A, § 9, because even if § 9 (6) had explicitly prohibited a court from compelling arbitration of a § 9 claim where the parties had agreed to arbitrate such claims, the State law would be in conflict with and displaced by the FAA, and could not apply to any arbitration agreement governed by the FAA. See, e.g., *Nitro-Lift Techs., L.L.C.* v. *Howard, supra* at 504; *AT&T Mobility LLC* v. *Concepcion, supra* at 1747.

Here, there is no dispute that the underlying financial services contract between the plaintiff and the defendants involved interstate commerce, where, according to the complaint, the plaintiff resides in Massachusetts and McGhee worked in Pennsylvania as a financial advisor for LPL. See *Miller, supra* at 678, and cases cited. See also *Loche* v. *Dean Witter Reynolds, Inc.,* 26 Mass. App. Ct. 296, 302 (1988) ("Contracts whose very purpose is to create a relationship for the purchase and sale of securities almost necessarily will involve interstate commerce"). Therefore, any arbitration agreement between them was governed by the FAA. Because our holding in *Hannon* does not apply to any arbitration agreement governed by the FAA, the judge erred in relying on that holding to deny the defendants' first motion to stay proceedings and compel arbitration.[9]

3. *Second order.* In denying the defendant's second motion to stay proceedings and compel arbitration, the judge essentially treated the motion as if it sought summary judgment on the issue of arbitrability of the dispute and denied it because he concluded that material disputes of fact remained as to whether the plaintiff had entered into an arbitration agreement in 1996 and whether any such agreement had been obtained by fraud. In so ruling, the judge made two errors.

---

[9]Because the contract here involved interstate commerce, we do not address whether claims under G. L. c. 93A, § 9, must be referred to arbitration where the contract includes an agreement to arbitrate but does not involve interstate commerce and, therefore, falls outside the scope of the FAA, 9 U.S.C. §§ 1 et seq. (2006).

First, if there were material disputes of fact that prevented the judge from ruling on the motion based on the evidence submitted, the judge, rather than deny the motion, should have ordered an expedited evidentiary hearing to resolve the disputed issues of fact so that he could summarily determine whether the claims should be resolved by an arbitrator or by a court. See *St. Fleur, supra* at 353.

Second, based on the undisputed evidence before the judge, the judge should have allowed the motion to compel arbitration. The plaintiff's complaint was not verified, and the plaintiff did not submit an affidavit in opposition to the motion or any other evidence. Consequently, the only evidence before the judge was McGhee's affidavit and the exhibits he appended to that affidavit, including the new account application signed by the plaintiff in 2003 in which she certified that she accepted the arbitration agreement in the master account agreement. Under that arbitration agreement, the plaintiff agreed to resolve through arbitration "any controversy between LPL arising out of or relating to [her] account, transactions with or for [her], or the construction, performance, or breach of this agreement *whether entered into prior, on or subsequent to the date hereof*" (emphasis added). Even if the plaintiff had not executed an arbitration agreement in 1996 when she first opened an account with LPL, her agreement to arbitrate in 2003 required arbitration of all disputes regarding the defendants' financial advice and transactions concerning her account, regardless of whether that advice was given or those transactions occurred before or after she executed the 2003 arbitration agreement. Therefore, there was no dispute of fact that the plaintiff had executed an arbitration agreement with the defendants that applied to the claims alleged in her complaint. See *Granite Rock Co.* v. *International Bhd. of Teamsters,* 561 U.S. 287, 297 (2010) ("court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute").

Nor was there any evidence before the judge that the arbitration agreement was obtained by fraud or was otherwise void or voidable. As noted earlier, under Federal substantive law, an arbitration agreement may be found invalid where it was fraudulently obtained, but in making this determination, the

judge must sever the arbitration provision from the remainder of the contract, and determine whether the arbitration provision was obtained by fraud, not whether the entire contract was obtained by fraud. See *Nitro-Lift Techs., L.L.C.* v. *Howard*, 133 S. Ct. 500, 503 (2012); *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445-446 (2006). The plaintiff's complaint alleges fraudulent conduct by McGhee but does not allege that her agreement to arbitrate was itself the product of fraud or duress, or that the arbitration provision itself is unconscionable or against public policy. Even if we put aside the fact that her allegations supporting a claim of fraud in the inducement are neither particularized nor verified, see Mass R. Civ. P. 9 (b), 376 Mass. 751 (1974), the most that can be inferred from the complaint is that the arbitration provision was a contract of adhesion, but this alone is insufficient to render an arbitration agreement invalid. "[C]ontracts [of adhesion] are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." *Miller, supra* at 684 n.16, quoting *Chase Commercial Corp.* v. *Owen*, 32 Mass. App. Ct. 248, 253 (1992). See *AT&T Mobility LLC* v. *Concepcion*, 131 S. Ct. 1745, 1750 n.6 (2011) ("States remain free to take steps addressing the concerns that attend contracts of adhesion . . . . Such steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms"). Certainly, an adhesion contract to arbitrate that contains a "prospective waiver of a party's *right to pursue* statutory remedies" could be unenforceable as unconscionable or against public policy (emphasis in original). See *American Express Co.,* v. *Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013), quoting *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). And an adhesion contract that imposes "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable" may also be unenforceable. *American Express Co.,* v. *Italian Colors Restaurant, supra* at 2310-2311. But the plaintiff has not demonstrated that she effectively will be prevented from pursuing a remedy if she is compelled to arbitrate, because she waived no statutory or common-law remedy in the arbitration

agreement, the amount of the arbitration fees would not make access to the arbitral forum impracticable in view of the substantial amount in compensatory damages that she claims (more than $330,000),[10] and the arbitrator would have the same power as a court to award compensatory damages, attorney's fees, and multiple damages if the plaintiff were to prevail on her claim under G. L. c. 93A, § 9. See *Preston* v. *Ferrer*, 552 U.S. 346, 359 (2008), quoting *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, *supra* at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum"); *Drywall Sys., Inc.* v. *Zvi Constr. Co.*, 435 Mass. 664, 669 (2002).

Because there is no dispute of material fact as to whether the plaintiff executed a valid arbitration agreement in 2003 that required the plaintiff to arbitrate the claims in her complaint, the defendants as a matter of law are entitled under the FAA to a stay of judicial proceedings and an order compelling arbitration.

*Conclusion.* We vacate the orders denying the defendants' motions to stay proceedings and compel arbitration, and remand the case to the Superior Court for the entry of an order consistent with this opinion staying the judicial proceeding and compelling arbitration.

*So ordered.*

---

[10]The "Pre-Dispute Arbitration Agreement" accepted by the plaintiff on February 7, 2003, does not directly refer to arbitration fees but provides that the arbitration shall be conducted in accordance with "the rules, then obtaining of the National Association of Securities Dealers, Inc.," now FINRA. See note 4, *supra*. Under rule 12900(a)(1) of FINRA's Code of Arbitration Procedure for Customer Disputes, in the FINRA Manual (2012), unless the director of FINRA dispute resolution defers all or part of the filing fee "on a showing of financial hardship," a party filing an arbitration must pay a filing fee in an amount based on the total amount of the claim, including any requested punitive and treble damages. In this case, where such an amount would exceed $1 million, the filing fee would be $1,800. Pursuant to rule 12900(d), the arbitrator may order another party to reimburse a party for all or part of the filing fee paid. Under rule 12902(a)(1), the parties to an arbitration must also pay a "hearing session fee" for each hearing session, which here would be $450 per hearing session with one arbitrator and $1,200 per hearing session with a panel of three arbitrators. Rule 12902(b) states that the arbitrator or panel of arbitrators may assess the hearing session fee in the arbitration award or require the parties to pay the fees during the course of the arbitration.