Leibensperger, Edward P., J.
The plaintiff, Elizabeth Ambeliotis (Elizabeth), filed this action for breach of fiduciary duly and other claims against the defendants, Austin Brown (Austin), Elizabeth Williams Brown, as Executrix of the Estate of Albert Brown (Albert), Metropolitan Pipe and Supply Company (MPSC), Mark H. Holly, Esq., Charles Adams, Esq., and Weston Patrick, P.A.[2] Defendants Austin, Albert, and MPSC (collectively the “Brown Defendants”) move to dismiss under Mass.R.Civ.P. 12(b)(6) and/or to compel arbitration. Defendants Holly, Adams, and *139 Weston Patrick, P.A. (collectively the “Attorney Defendants”) also move to dismiss under Mass.RCiv.P. 12(b)(6). On August 26, 2015, this courtheld ahearing on the motions. For the reasons stated below, the motions are allowed in part and denied in part.
BACKGROUND
The facts as revealed by the First Amended Complaint (complaint) are as follows.
Elizabeth, the plaintiff, is one of three children of Wesley E. Brown (Wesley), who died on September 18, 1998. Wesley owned MPSC, a Massachusetts corporation, located at 303 Binney Street, Cambridge, Massachusetts (Property), which is in the Kendall Square area of Cambridge. Wesley’s two other children are Austin and Albert. Albert died on February 2, 2011. Elizabeth Williams Brown is the executrix of Albert’s estate.
Wesley engaged Adams and Weston Patrick, P.A. to provide legal services to himself and to MPSC. Adams is now a retired Massachusetts lawyer and a former member of Weston Patrick. Holly is a current member of Weston Patrick and currently provides legal services to the defendants.
Wesley owned MPSC until his death in 1998. Wesley purchased the Property through his company, Canal Really Corporation, over the course of several transactions in the early 1960s and through another transaction in 1982. The Property consists of three parcels of land in two separately zoned portions, one industrial and one residential. Presently, six low rise industrial buildings are located on the Property. MPSC leases the Property.
Canal Realty Corporation owned the Property until December 19, 1988, when the Canal Realty Trust (CRT) was created. Austin, Albert, and Adams executed a Declaration of Trust creating CRT. They were the original named trustees of CRT. The Property was placed into the trust. When CRT was created, its beneficiaries were Austin, Albert, and the Elizabeth Brown Realty Trust (EBRT).
Wesley and Adams had previously established EBRT on September 12, 1985, for Elizabeth’s benefit. See Complaint at Exhibit B (copy of irrevocable trust agreement establishing EBRT). Adams was the trustee of EBRT. Elizabeth was never provided with a copy of the EBRT, but Wesley and Adams advised her that Adams was her trustee and would manage her interest in CRT on her behalf.
On the same date that CRT was created, the beneficiaries of CRT formed a Voting Trust Agreement (VTA) with respect to CRT. Austin and Albert signed the VTA on behalf of themselves as beneficiaries of CRT and Adams signed the VTA on behalf of EBRT as beneficiary. Elizabeth claims that the VTA changed CRT from a nominee trust into a typical trust. The VTA eliminated essential characteristics of CRT as a nominee trust. The trustees of CRT became decision makers for CRT by virtue of the VTA. The beneficiaries of CRT, in their capacity as beneficiaries, lost authority to control CRT.
The VTA references that Albert and Austin each hold a forty percent beneficia1 interest in CRT, and that EBRT holds a twenty percent interest. According to the VTA, the parties wish to “insure the continuity and stability of management” of CRT, “avoid a conflict between them with regard to the management” of CRT “and with regard to voting the beneficial shares of’ CRT, unite the voting powers held by them. Albert, Austin, and Adams, individually and not as trustee of EBRT, became the voting trustees. Albert and Austin could name successor trustees. The voting trustees possessed legal title to the beneficial interests in CRT and were entitled to exercise all rights and powers as absolute owners of such beneficial interests, including the full and unqualified right and power to vote. Adams could be removed as a voting trustee at any time by a written instrument signed by all parties or their successors. Moreover, all actions taken by the voting trustees and all questions arising among the voting trustees were to be determined by a majority vote of the voting trustees. See Complaint at Exhibit C (copy of VTA). In addition, the VTA states that: “Any dispute that may arise hereunder as to any provision of this Voting Trust Agreement, or as to the enforceability of this Voting Trust Agreement shall be submitted to binding arbitration before the American Arbitration Association.” Id. at para. 10.
Elizabeth alleges that she was not informed of the VTA and that Adams entered into the VTA in his capacity as trustee of EBRT without her knowledge or consent. She contends that the “VTA created a traditional trust of CRT in which Elizabeth was a beneficiary with no management rights.” Austin, Albert, and Adams, who were not only trustees of CRT, but also voting trustees under the VTA, made all of the decisions. According to Elizabeth, the VTA granted power of attorney to Albert, Austin, and Adams to decide issues involving Elizabeth’s beneficial interest in CRT, and in that capacity and in the capacity as trustees, they owed Elizabeth fiduciary duties.
In 1995, when Elizabeth turned thirty, Adams resigned as trustee of EBRT. Since then, Elizabeth, in her individual capacity, became a beneficiary of CRT in the place of EBRT. In June 2009, Adams resigned as trustee of CRT. Albert and Austin proposed to Elizabeth that Holly succeed Adams as a trustee of CRT. Elizabeth objected to Holly being named as successor trustee, and requested to be appointed as successor trustee. Albert and Austin refused to appoint her as a trustee of CRT. Holly became counsel for Albert, Austin, and MPSC when Adams retired in June 2009.
In June 2009, Adams also resigned as a voting trustee of the VTA. Because at the time Elizabeth was not aware of the VTA, she did not request to be *140 appointed as Adams’s successor as voting trustee. Elizabeth believes that no successor to Adams as trustee of the VTA was ever appointed, even though the VTA requires that a successor be named for Adams. Since June 2009, only Austin and Albert, and more recently, Elizabeth Williams Brown, as executrix, have exercised control of CRT as the only voting trustees under the VTA.
Adams and members of his firm have acted as counsel for MPSC, Austin, Albert, and CRT. Adams served as a corporate officer of MPSC until 2009. Holly has served as a corporate officer of MPSC since Adams retired.
Elizabeth alleges that when CRT and MPSC entered into leases for the Property, it was MPSC’s interest that was advanced and not CRT’s interest. She contends that the defendants did not determine a fair rental value of the Property and did not take into consideration the location and market value of the Property. In addition to renting the Property to MPSC for amounts substantially below fair market rates, the defendants have allegedly provided other benefits to MPSC to the prejudice of CRT. For instance, in October 1997, Adams, Austin, and Albert, mortgaged the Properly for $1.5 million in order to build a storage facility for MPSC. The decision to mortgage the Properly conferred no benefit to CRT, and the added expense of paying a monthly mortgage was not accompanied by any increased rent from MPSC. Also, Elizabeth claims that the construction did not add value to the Property.
In 1999, Albert received an oral offer of $30 million for the Properly from a well-known developer. Elizabeth did not learn of the offer. Albert and Austin allegedly received other lucrative offers to purchase the Property, but Elizabeth was not made aware of them.
From 1989 to 2001, the defendants failed to advise Elizabeth of important contemplated zoning changes that posed the risk of reducing fair market value for the Property by restricting development. During this time period, the voting trustees received offers for the Properly prior to the zoning changes taking effect, but they did not inform Elizabeth about the offers. In 2001, the city of Cambridge instituted zoning changes that limited development opportunities for the Property.
In December 2012, Holly asked Elizabeth to approve a new lease agreement for MPSC for an annual rent of $600,000. Elizabeth typically signed legal documents presented to her based on representations made by the defendants. Holly served as MPSC’s legal counsel and corporate officer. Elizabeth claims that she was not informed about the true value of the Property.
In May 2013, certain real estate developers and a biotech company expressed interest in the Property for development. At that time, Elizabeth actually became aware of the possible value of the Properly. Since that time, Elizabeth has repeatedly expressed her concerns about being excluded from CRT’s management and not being provided with information about the Property.
In the summer of 2013, Elizabeth met with real estate brokers and developers who were familiar with the Kendall Square real estate market. Two buyers indicated a willingness to make offers for the Property. One offer was for $38 million, and the other offer was for $42 million. Elizabeth also received tentative offers of up to $60 million if necessary permits were obtained for development.
Holly, Austin, and Elizabeth Williams Brown have insisted that MPSC remain the tenant at the Property and continue to pay substantially below fair market value rent. In July 2013, Elizabeth met with Holly and Elizabeth Williams Brown to advise them of the developer’s interest in the Property. Defendants refused to take steps to market the Property or to realize its value. Moreover, the defendants contacted certain brokers and developers and advised them that Elizabeth was not an owner of the Property and that the Property was not for sale.
On March 14, 2014, Elizabeth filed this action in the Superior Court. Her complaint contains eight counts: declaratory judgment (Count I), breach of fiduciaiy duty (Counts II, III, and IV), unjust enrichment (CountV), violation of G.L.c. 93A, §11 (Count VI), violation of the implied covenant of good faith and fair dealing (Count VII), and accounting (Count VIII).
DISCUSSION
Brown Defendants’ Motion to Dismiss and/or to Compel Arbitration
The Brown Defendants argue, among other things, that Elizabeth’s claims against Albert and Austin arise under the VTA and must be arbitrated. See Brown Defendants’ Memorandum at 7-9. They cite the broad arbitration clause contained in the VTA, which states: “Any dispute that may arise hereunder as to any provision of this Voting Trust Agreement, or as to the enforceability of this Voting Trust Agreement shall be submitted to binding arbitration before the American Arbitration Association.”
Elizabeth argues that the Brown defendants cannot compel her to arbitrate the instant case because she is a nonsignatoiy to the VTA. See Plaintiffs Opposition at 15-18. She argues that none of the theories for binding nonsignatories to arbitration agreements, discussed below, apply to her. Moreover, Elizabeth argues that Adams only agreed to act as a voting trustee under the VTA in his individual capacity and not as a trustee of EBRT, so “under no circumstances can his signing onto arbitration be visited upon Elizabeth.”
In Massachusetts, arbitration agreements are governed by the Massachusetts Arbitration Act, G.L.c. 251, §§1 et seq. McInes v. LPL Financial, LLC, 466 Mass. 256, 260 (2013). “(WJhere the parties have executed an arbitration agreement and the agreement *141 is not invalid on legal or equitable grounds, the agreement to arbitrate is enforceable against the parties.” Id. “A party aggrieved by the failure or refusal of another to proceed to arbitration . . . may apply to the superior court for an order directing the parties to proceed to arbitration.” G.L.c. 251, §2(a). “If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration; otherwise, the application shall be denied.” Id. “[T]he question whether an agreement creates a duty to arbitrate is undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise.” Massachusetts Highway Dept. v. Perini Corp., 444 Mass. 366, 374 (2005) (citation omitted).
Massachusetts courts recognize that both federal and state law express a strong public policy favoring arbitration as an alternative to litigation for settling commercial disputes. Miller v. Cotter, 448 Mass. 671, 676-77 (2007). Yet, because arbitration is but a creature of contract, the language of the parties governs the determination. Commonwealth v. Philip Morris, Inc., 448 Mass. 836, 843-44 (2007). When considering a broadly worded arbitration clause, there is a presumption that the contract dispute at issue is encompassed by the clause unless it is clear that the dispute is excluded. Id. at 843-44. Moreover, when deciding whether a particular dispute is arbitrable, the court does not consider the merits of the underlying claims. Id. at 843.
While Elizabeth is not, as an individual, a signatory to the VTA,
“(co)urts routinely recognize that arbitration agreements may require arbitration even where all parties to the dispute did not sign the arbitration agreement.” Sourcing Unlimited, Inc. v. Asimco International, Inc., 526 F.3d 38, 46 n.8 (1st Cir. 2008). ‘Traditionally, courts have recognized six theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference; (2) assumption;. (3) agency; (4) veil piercing/alter ego; (5) equitable estoppel; and (6) third-parly beneficiary.” Machado v. System4, LLC, 471 Mass. 204, 209-10 (2015). “Under a ‘third-party beneficiary’ theory, ‘a court must look to the intentions of the parties at the time the contract was executed’ and examine whether the contract displays a clear intent to make a nonsignatory a third-parly beneficiary. ” Id. at 210 n.13, quoting Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 362 (5th Cir. 2003), cert. denied, 541 U.S. 937 (2004).
After a careful review of the complaint, its attachments, and the arguments set forth by the parties, this court concludes that Elizabeth’s claims in this action against the Brown Defendants and Adams must be submitted to binding arbitration before the American Arbitration Association under the arbitration provision contained in the VTA. Although Elizabeth is a nonsignatory to the VTA, she is (1) bound by the agreement of her trustee, Adams, to enter into the VTA, and (2) a third-party beneficiary of the VTA. See Machado v. System4, LLC, 471 Mass, at 210. Adams’ signature, as trustee of EBRT, on the VTA bound Elizabeth as he was her agent or representative. Moreover, Elizabeth was a beneficiary of CRT and, thus, derived the benefits of the VTA, which was created to “insure the Continuity and stability of management” of CRT and “to avoid a conflict. . . with regard to the management” of CRT. Elizabeth continues to benefit from CRT today in the form of twenty percent of CRT’s income.
Essentially, Elizabeth’s claims in this action involve her belief that CRT is not obtaining fair rent from MPSC, a company owned and managed by Austin and Albert, and that CRT is being operated for the brothers’ benefit, not for the benefit of all of the beneficiaries. She asserts that Adams breached his fiduciary duty to her and failed to give her important information about CRT, the VTA and the Property. Because Elizabeth’s claims against the Brown Defendants and Adams involve the obligations of the trustees of the VTA to act for the benefit of CRT and its beneficiaries, Elizabeth’s claims are clearly within the scope of the broad arbitration provision contained in the VTA. Accordingly, all of the claims against the Brown Defendants and Adams shall be stayed pending the outcome of arbitration between the parties.[3]
Attorney Defendants’ Motion to Dismiss
To survive a motion to dismiss, the plaintiffs “(flac-tual allegations must be enough to raise a right to relief above the speculative level... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...” Iannacohino v. Ford Motor Co., 451 Mass. 623, 636 (2008), citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). In other words, “[w]hile a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief requires more than labels and conclusions . . .” Iannacchino, 451 Mass, at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1966. Dismissal under Mass.R.Civ.P. 12(b)(6) is proper where a reading of the complaint establishes beyond doubt that the facts alleged do not support a cause of action which the law recognizes, such that the plaintiffs claim is legally insufficient. Nguyen v. William Joiner Center for the Study of War and Social Consequences, 450 Mass. 291, 295 (2007).
The Attorney Defendants move to dismiss all of the claims against them under Mass.R.Civ.P. 12(b)(6). As an initial matter, as discussed above, this court concludes that the claims against Adams must be resolved through binding arbitration. All of Elizabeth’s claims against Adams and his former law firm, Weston Pat *142 rick, shall be stayed pending the outcome of arbitration.
The remaining claims against Holly are as follows: declaratory judgment (Count I), breach of fiduciary duty against Holly (Count IV), unjust enrichment (CountV), violation of G.L.c. 93A, §11 (Count VI), and violation of the implied covenant of good faith and fair dealing (Count VII). As to Holly, Elizabeth alleges that Holly replaced Adams as counsel for all parties, except Elizabeth, when Adams retired from practicing law in June 2009. Holly also served as a corporate officer to MPSC since June 2009. Elizabeth states in her complaint that she refused to allow Holly to be a successor trustee to CRT in June 2009.[4]
The complaint fails to state claims upon which relief can be granted as to Holly. There is no claim that Holly ever served as Elizabeth’s attorney. His duties as an attorney ran to Austin, Albert, and MPSC. At most, Holly served as counsel to Austin and Albert in their capacity as trustees of CRT. But the attorney for a trustee does not owe a duty to the beneficiaries of the trust. See Spinner v. Nutt, 417 Mass. 549, 553 (1994) (“Should we decide that a trustee’s attorney owes a duty not only to the trustee but also to the trust beneficiaries, conflicting loyalties could impermissibly interfere with the attorney’s task of advising the trustee. This we refuse to do”); Bratcher v. Moriarty, Donoghue & Leja, P.C., 54 Mass.App.Ct. 111, 115 (2002) (recognizing that “because the interests of a trustee may at times conflict with the interests of a beneficiary, the duty owed by an attorney to the trustee whom he or she represents may not extend to the beneficiaries”). Accordingly, Elizabeth’s claims against Holly shall be dismissed.
ORDER
The Brown Defendants’ Motion to Dismiss and/or to Compel Arbitration is ALLOWED. The parties are ORDERED to submit to binding arbitration before the American Arbitration Association. All of Plaintiff Elizabeth Ambeliotis’s claims against the Brown Defendants shall be STAYED pending the outcome of arbitration between the parties.
The Attorney Defendants’ Motion to Dismiss is ALLOWED in part and DENIED in part. The motion is DENIED as to Charles Adams and Weston Patrick, P.A. but the claims are STAYED pending the outcome of arbitration. All of the claims against Mark H. Holly are DISMISSED.

 throughout this decision, the court will refer to members of the Brown family by their first names for the sake of clarity.

 MPSC is not subject to arbitration under the VTA. However, in the interests of judicial efficiency, all claims against MPSC shall also be stayed, pending the outcome of arbitration. The court notes that nothing prevents the parties from agreeing to include MPSC in any future arbitration proceedings.

 In the “Introduction” to the complaint, Elizabeth states that Holly “succeeded Attorney Adams as a trustee of CRT ...” Yet at page eight of the complaint in her substantive allegations, she claims that she refused to allow Holly to become a tmstee of CRT. The court accepts this latter claim as the true statement.