**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3464-18T2

JOHN GAFFNEY,

    Plaintiff-Appellant,

v.

ALAN LEVINE, DIVERSIFIED
FINANCIAL CONSULTANTS,
LLC, LPL FINANCIAL HOLDINGS,
INC., PATRICK SULLIVAN, and
PRIVATE ADVISOR GROUP, LLC,

    Defendants-Respondents,

and

MORRISTOWN FINANCIAL GROUP,

    Defendant.

_____

> Argued December 10, 2019 – Decided January 29, 2020
>
> Before Judges Gilson and Rose.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8124-18.

Lawrence N. Lavigne argued the cause for appellant (Lawrence N. Lavigne, of counsel and on the briefs; Jignesh Shah, on the briefs).

Rosaria A. Suriano argued the cause for respondents Alan Levine and Diversified Financial Consultants, LLC (Brach Eichler LLC, attorneys; Rosaria A. Suriano, of counsel and on the brief; Mark E. Critchley, on the brief).

Robyn L. Silvermintz argued the cause for respondents LPL Financial Holdings, Inc., Patrick Sullivan and Private Advisor Group, LLC (Winget, Spadafora & Schwartzberg, LLC, attorneys; Robyn L. Silvermintz, on the brief).

PER CURIAM

Plaintiff John Gaffney appeals from orders dismissing his complaint against defendants and compelling him to arbitrate all of his claims. We affirm the portions of the orders that compelled arbitration, but remand with direction that new orders be entered staying the action pending the arbitration.

I.

Plaintiff is an accredited investment fiduciary and certified fund specialist. He is also licensed as a registered investment advisor. In connection with those positions, plaintiff is subject to the rules and regulations of the Financial Industry Regulatory Authority (FINRA), formerly known as the National Association of Securities Dealers (NASD). FINRA is a self-regulatory

organization created under the federal Securities Exchange Act of 1934, 15 U.S.C. §§ 78a to 78qq, and is under the supervision of the Securities and Exchange Commission.

The FINRA regulations include a Code of Arbitration Procedure for Industry Disputes (FINRA Arb. Code). Under that Code, FINRA members and associated persons must arbitrate disputes arising "out of the business activities of a member or an associated person." FINRA Rule 13200. The FINRA Arb. Code does not cover statutory-based claims of employment discrimination but does allow parties to agree to arbitrate such claims. Id. at 13201(a). In that regard, the FINRA Arb. Code states:

> A claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose. If the parties agree to arbitrate such a claim, the claim will be administered under Rule 13802.
>
> [Ibid.]

In 2007, plaintiff became a registered representative of LPL Financial Holdings, Inc. (LPL). As a representative of LPL, plaintiff managed his own office and business. When he joined LPL, plaintiff signed a Branch Office Manager Agreement (BOMA) and a Representative Agreement (RA). Both

agreements contained substantively identical arbitration provisions, which

stated:

> Branch Office Manager [and Representative] hereby expressly agrees to submit to final and binding arbitration before the NASD any and all disputes, claims or controversies relating to Branch Office Manager's [and Representative's] association with or termination from LPL. Branch Office Manager [and Representative] expressly gives up [the] right to sue in a court of law or equity, including the right to a trial by jury. Specific examples of disputes, claims or controversies that are required to be arbitrated include, but are not limited to, allegations of unlawful termination, sexual or racial harassment or discrimination on the job, gender discrimination, and claims of age or handicap discrimination.

Plaintiff signed the BOMA in March 2007, and that agreement states that it is governed by California law. The RA was signed in May 2007, and states that it is governed by Massachusetts law.

In April 2007, plaintiff also signed a Uniform Application for Securities Industry Registration or Transfer (Form U-4). FINRA requires that form to be completed before entry into a registered representative agreement with a broker or dealer. Form U-4 also contains an arbitration clause.[1]

---

[1] At oral argument before us, LPL conceded that it did not send certain notices in connection with Form U-4 and, therefore, it was not relying on the arbitration provision in Form U-4.

4

In 2016, plaintiff began to suffer from certain health problems. He alleges that Patrick Sullivan, who was his "contact" with LPL, encouraged him to sell his business to another LPL representative, Alan Levine. Sullivan was the managing director of Private Advisor Group, LLC (PAG). Levine operated his business under a limited liability company, known as Diversified Financial Consultants, LLC (DFC). Plaintiff further alleges that he agreed to sell his business to Levine, but Levine later reneged on the agreement and effectively stole and damaged his business. After plaintiff reported Levine's activities, LPL terminated the RA and its relationship with plaintiff.

In November 2018, plaintiff filed a complaint alleging twelve causes of action against Levine, DFC, LPL, Sullivan, and PAG.[2] Against Levine and DFC (collectively, the Levine defendants), plaintiff alleged breach of contract, fraud, and theft related to the aborted sale of, and damage to, his business. Against LPL, PAG, and Sullivan (collectively, the LPL defendants) plaintiff alleged complicity in Levine's alleged illegal actions, such as negligence, aiding and abetting, and tortious interference with prospective economic advantage. In addition, plaintiff asserted claims against LPL for violations of the New Jersey

---

[2] Plaintiff also named Morristown Financial Group (MF) as a defendant, but later voluntarily dismissed his claims against MF.

Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14.

Defendants moved to stay or dismiss plaintiff's complaint and compel arbitration. The LPL defendants sought to compel arbitration under the BOMA, the RA, and the FINRA Arb. Code. The Levine defendants sought to compel arbitration under the FINRA Arb. Code.

After hearing oral argument, on March 29, 2018, the trial court entered two orders (1) dismissing with prejudice the claims against PAG and MF; (2) compelling all other claims to arbitration; and (3) dismissing plaintiff's complaint without prejudice. On the record, the trial court reasoned that there was a "comprehensive body of law" that compelled arbitration of disputes among brokers and brokerage firms and that under the BOMA, the RA, and the FINRA Arb. Code, all of plaintiff's claims were subject to mandatory arbitration.

II.

On appeal, plaintiff challenges both orders compelling arbitration. He makes six arguments, contending (1) neither the BOMA nor the RA are valid because he agreed to arbitrate before NASD and that organization no longer exists; (2) the arbitration provisions in the BOMA and the RA are unconscionable because they are not mutual in that only his claims are subject

6

to arbitration; (3) the arbitration provision in the BOMA is unenforceable under California law; (4) the arbitration provision in the RA is unenforceable under Massachusetts law; (5) the arbitration provisions in the BOMA and RA are in conflict and are not sufficiently clear to be enforceable; and (6) the FINRA Arb. Code does not cover his LAD or CEPA claims.

We are not persuaded by any of plaintiff's arguments and we affirm the portions of the orders compelling arbitration. We start by identifying our standard of review. Next, we review the three arbitration provisions. Finally, we address plaintiff's arguments.

A.

We use a de novo standard of review when determining the enforceability of arbitration agreements. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). The validity of an arbitration agreement is a question of law, and we conduct a plenary review of such legal questions. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 446 (2014) (citing Hirsch, 215 N.J. at 186); Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citation omitted) (citing Hirsch, 215 N.J. at 186).

B.

Under both federal and state law, arbitration is a creature of contract. 9 U.S.C. § 2; Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (U.S.), LLC, 282 P.3d 1217, 1224 (Cal. 2012) (citation omitted) (quoting Craig v. Brown & Root, Inc., 100 Cal. Rptr. 2d 818, 820 (Ct. App. 2000)); McInnes v. LPL Fin., LLC, 994 N.E.2d 790, 794 (Mass. 2013) (citations omitted); Hirsch, 215 N.J. at 187 (citations omitted). The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, was enacted "to abrogate the then-existing common law rule disfavoring arbitration agreements 'and to place arbitration agreements upon the same footing as other contracts.'" Martindale v. Sandvik, Inc., 173 N.J. 76, 84 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> [9 U.S.C. § 2.]

A-3464-18T2

The California Arbitration Act (CAA), the Massachusetts Arbitration Act (MAA), and the New Jersey Arbitration Act are similar to the FAA in enforcing arbitration provisions. Tiri v. Lucky Chances, Inc., 171 Cal. Rptr. 3d 621, 627-28 (Ct. App. 2014) (citations omitted); McInnes, 994 N.E.2d at 794 (citation omitted); Hirsch, 215 N.J. at 187. In determining whether a matter should be submitted to arbitration, a court must evaluate (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute falls within the scope of the agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Bruni v. Didion, 73 Cal. Rptr. 3d 395, 405 (Ct. App. 2008) (citations omitted); Carpenter v. Pomerantz, 634 N.E.2d 587, 588 (Mass. App. Ct. 1994); Martindale, 173 N.J. at 92.

Plaintiff agreed to arbitrate disputes under three arbitration provisions: (1) the FINRA Arb. Code; (2) the BOMA; and (3) the RA. The FINRA Arb. Code involves business and transactions affecting interstate commerce and is, therefore, governed by the FAA. 9 U.S.C. §§ 1 to 2; see also Valentine Capital Asset Mgmt., Inc. v. Agahi, 94 Cal. Rptr. 3d 526, 531 (Ct. App. 2009) (citations omitted); McInnes, 994 N.E.2d at 794 (citation omitted); State Farm Gaur. Ins. Co. v. Hereford Ins. Co., 454 N.J. Super. 1, 5 (App. Div. 2018) (citations omitted). The FINRA Arb. Code states that "a dispute must be arbitrated under

the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:  [m]embers; [m]embers and [a]ssociated [p]ersons; or [a]ssociated [p]ersons." FINRA Rule 13200(a). LPL is a member of FINRA. Id. at 13100(q) (defining a member to include "any broker or dealer admitted to membership in FINRA").  Plaintiff, Levine, and Sullivan are all associated persons because they were associated with LPL. Id. at 13100(b) (defining "associated person" to include "a person associated with a member"). Accordingly, the FINRA Arb. Code covers plaintiff's claims against the Levine defendants because those claims arise out of the business activities of associated persons. The FINRA Arb. Code also covers all of plaintiff's claims against the LPL defendants, with the exception of the LAD and CEPA claims.

Plaintiff's LAD and CEPA claims must be arbitrated under either the BOMA or the RA.  Both those agreements expressly include discrimination claims. Under the FAA, CAA, and MAA statutory discrimination claims can be arbitrated so long as the claimant can pursue the statutory cause of action in the arbitration forum and is accorded certain procedural rights. See Gilmer, 500 U.S. at 26-27 (citations omitted); Pearson Dental Supplies, Inc. v. Superior Court, 229 P.3d 83, 91 (Cal. 2010) (citations omitted); Joule, Inc. v. Simmons, 944 N.E.2d 143, 148 (Mass. 2011) (citations omitted).

10

The arbitration provisions in the BOMA and the RA are valid and enforceable against plaintiff. Plaintiff signed both agreements. The agreements, moreover, were the product of mutual assent and they state that plaintiff was giving up the right to pursue in court "any and all disputes" relating to his employment, including employment-related discrimination claims, and instead, agreed to arbitrate those claims through the procedures provided by the FINRA Arb. Code. See Atalese, 219 N.J. at 442 ("An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" (quoting NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011))).

C.

Plaintiff first argues that there was no meeting of the minds because the BOMA and the RA identify NASD as the arbitration forum and NASD no longer exits. We reject this argument.

In July 2007, NASD was renamed FINRA. See Program for Allocation of Regulatory Responsibilities, 72 Fed. Reg. 42146, 42147 (Aug. 1, 2007). Accordingly, because FINRA is the successor entity to NASD, courts have consistently compelled arbitration before FINRA, where, as here, the arbitration agreement specified that arbitration will occur under the rules of NASD. See,

11

e.g., Lewis v. UBS Fin. Servs., 818 F. Supp. 2d 1161, 1166 (N.D. Cal. 2011) (citations omitted); see also Hirsch, 215 N.J. at 182-83 (recognizing FINRA as the successor to NASD and that contracts calling for arbitration under NASD are to be arbitrated under FINRA); Ronay Family Ltd. P'ship v. Tweed, 157 Cal. Rptr. 3d 680, 688 (Ct. App. 2013) (citations omitted) (finding that agreement to arbitrate in accordance with the rules of NASD required abiding by parallel rules established subsequently by FINRA); McInnes, 994 N.E.2d at 799 n.10 (equating the obligation to abide by NASD rules with an obligation to abide by FINRA rules).

Next, plaintiff contends that the arbitration provisions in the BOMA and the RA are unconscionable because they are not mutual. We disagree with this argument for several reasons.

First, under the FINRA Arb. Code, all parties to this dispute are required to arbitrate all of their claims, except for the CEPA and LAD claims. Second, we construe the language in the arbitration provisions in the BOMA and the RA as mutual. That is, both plaintiff and LPL are required to arbitrate "any and all" disputes with each other. See Serpa v. Cal. Surety Investigations, Inc., 155 Cal. Rptr. 3d 506, 513 (Ct. App. 2013) (citations omitted) (finding that an agreement to arbitrate is mutual when the agreement includes language that subjects "all"

or "any" disputes to arbitration). Finally, since only plaintiff can bring a LAD or CEPA claim, there is nothing unconscionable about enforcing the arbitration provisions in the BOMA and the RA against plaintiff.

Plaintiff also claims that the arbitration provisions in the BOMA and the RA are unenforceable under California and Massachusetts law. This argument fails for two reasons.

First, as previously noted, the disputes between plaintiff and defendants arise out of business and transactions affecting interstate commerce. Accordingly, the FAA controls. See 9 U.S.C. §§ 1 to 2; Valentine, 94 Cal. Rptr. 3d at 531 (citations omitted); McInnes, 994 N.E.2d at 794 (citation omitted); see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 58-64 (1995) (holding that a generic choice of law provision, which did not expressly state that the FAA did not apply, did not displace the FAA); Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 8-10 (1st Cir. 2019) (same).

Second, even if we were to look to California or Massachusetts law, both states would enforce the arbitration provisions. See Pearson Dental, 229 P.3d at 91 (citations omitted); Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 681-89 (Cal. 2000) (citations omitted); McInnes, 994 N.E.2d at 798-99 (citations omitted); Joule, 944 N.E.2d at 148 (citations omitted). We note,

furthermore, that only one of the agreements needs to be enforceable to compel plaintiff to arbitrate his claims against the LPL defendants.

We also note that FINRA arbitration procedures provide reasonable procedures similar to those used in other institutional arbitrations, such as the American Arbitration Association. See Hirsch, 215 N.J. at 182 n.3. FINRA arbitration claims are initiated by the filing of a statement of claim, an answer, and the appointment of arbitrators. FINRA Rules 13302 to 13303, 13400 to 13406. Discovery is provided and, typically, a hearing is held. Id. at 13500 to 13514, 13600. Following the hearing, the arbitrators render an award. Id. at 13904.

We also reject plaintiff's argument that the arbitration provisions in the BOMA and the RA are in conflict and are not sufficiently clear. As we have already discussed, the arbitration provision in the BOMA is enforceable under both federal and California law. Similarly, the arbitration provision in the RA is enforceable under both federal and Massachusetts law. Accordingly, there is no conflict created by the reference to California law in the BOMA and Massachusetts law in the RA. To the extent that plaintiff had a question about the application of the laws of two different states, he should have inquired at the time that he signed the agreements in 2007.

Finally, we have already explained that although the FINRA Arb. Code does not automatically apply to a statutory employment discrimination claim, the Code does allow parties to agree to arbitrate such claims. Plaintiff twice agreed to arbitrate the LAD and CEPA claims under the BOMA and the RA.[3]

D.

We disagree with the trial court in one respect. The trial court should not have dismissed the complaint. Instead, the FAA provides that a party may request a stay if a court action has been commenced and that action involves "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3; see also Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 566, 577 (App. Div. 2007) (finding that "[u]nder [9 U.S.C. § 3] the court must stay an arbitrable action pending its arbitration" after one of the parties applied for a stay). Accordingly, we remand with direction that the trial court enter new orders. Those orders will provide that plaintiff's claims are stayed pending arbitration, and the parties are to proceed to arbitration in accordance with the FINRA Arb. Code.

_____

[3] LAD was amended effective March 18, 2019, to prohibit the waiver of any substantive or procedural right or remedy related to a claim of discrimination. That amendment, however, does not apply to the BOMA or the RA because they were signed in 2007, and the amendment to LAD applies prospectively. N.J.S.A. 10:5-12.7 (codifying L. 2019, c. 39, § 1); L. 2019, c. 39, § 6.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3464-18T2